# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT STROUD, | : | |
|     Plaintiff | : | CIVIL ACTION NO. 3:17-2183 |
| v. | : | (MANNION, D.J.) |
| SUSQUEHANNA COUNTY, ELIZABETH ARNOLD, and MARY ANN WARREN, | : | |
|     Defendants | | |

## **MEMORANDUM**

Presently before the court is a motion to dismiss the plaintiff's complaint, (Doc. 1), pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the defendants, Susquehanna County, Commissioner Elizabeth Arnold and Commissioner Mary Ann Warren. (Doc. 8). The plaintiff, Robert Stroud, brings claims for retaliation, discrimination and creating a hostile work environment, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e. He also asserts state law claims under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, *et seq.* PHRA, for retaliation and a hostile work environment. The plaintiff alleges that when he was Acting Chief Clerk of Susquehanna County one of his female subordinates reported incidents of inappropriate conduct by Richard Ely, the Susquehanna County Director of Veterans Affairs.[1] The plaintiff alleges that after he reported the inappropriate

---

[1]The court notes that the instant case is related to the case filed by the deputy clerk against the three Susquehanna County defendants in the instant case as well as Ely. *See* McNamara v. Susquehanna County, Civil No. 17-

conduct to the defendant Commissioners, they subjected him to increasing and pervasive harassment and retaliation. Consequently, the plaintiff alleges that he was demoted. For the reasons discussed herein, the defendants' motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was initially hired by Susquehanna County in September 2012 and held various positions. In June 2014, plaintiff was promoted to Acting Chief Clerk of Susquehanna County and he became the Chief Clerk in January 2016. In December 2015, plaintiff was contacted by his Administrative Assistant, Maggie McNamara, regarding an alleged incident of unwanted advances by Ely. In particular, McNamara alleged that Ely leaned into her open car window and made improper advances towards her. Plaintiff reported the incident to defendant Commissioners Arnold and Warren, and they issued Ely a written reprimand.

After he reported the incident, plaintiff noticed that the Commissioners began to constantly harass McNamara. Plaintiff was also harassed by the Commissioners and, he alleges that they retaliated against him for reporting the McNamara incident.

In May 2016, plaintiff told Commissioner Alan Hall that "he believed he was facing retaliation for defending McNamara from the harassment she was

---

2182, M.D.Pa.

receiving." Plaintiff alleges that the retaliatory and harassing actions Arnold and Warren took against him, included, making personal and derogatory comments against him and undermining his authority as Chief Clerk.

On June 7, 2016, plaintiff again complained to Arnold and Warren about creating a hostile work environment due to their personal and derogatory comments about him and since they intimated that he was conducting an improper relationship with a co-worker. On the same day, Arnold confronted plaintiff and told him she was unhappy that he lodged a hostile work environment complaint with the County. Subsequently, plaintiff alleges that Arnold told another County employee that she wanted plaintiff fired. Plaintiff also alleged that Arnold and Warren directed him to conduct "write-ups" for himself and McNamara, and told him that if he refused, he would be terminated. Plaintiff then completed the write-ups "under duress."

On June 22, 2016, Arnold again implied that plaintiff was involved in an inappropriate relationship with a co-worker. Then, on July 13, 2016, Arnold informed Hall that she wanted to eliminate the Public Safety Director position to which plaintiff planned to return after serving as Chief Clerk.

In October, 2016, Arnold and Warren went into plaintiff's office and Warren began an unprovoked verbal attack on plaintiff. Plaintiff then wrote letters to all of the Commissioners and their solicitor about the incident. Thereafter, Arnold was sent a letter by Hall and Warren stating that her actions towards plaintiff were "harassing and retaliatory and must stop immediately."

In January 2017, Arnold and Warren demanded to see all emails between plaintiff and McNamara which was further alleged retaliatory and harassing actions towards plaintiff.

On April 3, 2017, Arnold inquired about whether plaintiff's job with the Count was necessary.

On April 16, 2017, plaintiff left his position as Chief Clerk with the County allegedly due to the hostile work environment created by Warren and Arnold. He then became Chief County Detective with the Susquehanna County District Attorney's Office. In addition to being Chief County Detective, plaintiff was also the Director of Public Safety for the County.

Despite his new position, plaintiff alleges that the harassment by Arnold and Warren continued.

Plaintiff alleges that all of the harassment and retaliation by Arnold and Warren were because of his defense of McNamara, and because he participated in the investigation and proceeding regarding practices that were unlawful under Title VII. Plaintiff further avers that after he filed a charge of harassment with the Equal Employment Opportunity Commission ("EEOC"), the harassment and retaliation by Warren and Arnold against him increased.

According to plaintiff, following exhaustion of his administrative remedies, he filed his complaint with this court on November 29, 2017. (Doc. 1). Plaintiff's complaint contains four counts, (I) Title VII Retaliation, (II) Title VII discrimination/Hostile Work Environment, (III) Retaliation under the PHRA, and (IV) Hostile Work Environment under the PHRA. Plaintiff alleges that

Arnold and Warren acted in their official and personal capacities. As relief, plaintiff seeks an injunction to prevent defendants from harassing their employees, monetary damages, including back pay and front pay, punitive damages, equitable relief, attorney's fees, and costs.

Defendants were served with the complaint and on December 20, 2017, they filed waivers of service.

On January 29, 2018, defendants filed a motion to dismiss the complaint. (Doc. 8). Defendants filed their brief in support on February 12, 2018. (Doc. 9). Plaintiff filed his brief in opposition to the motion on February 23, 2018. (Doc. 10). Defendants then filed a reply brief on March 9, 2018. (Doc. 11).

This court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343. The court can exercise supplemental jurisdiction over plaintiff's claims under the PHRA pursuant to 28 U.S.C. §1337. Venue is appropriate in this court since the alleged constitutional violations occurred in this district and all parties are located here. *See* 28 U.S.C. §1391.[2]

**II.   DISCUSSION**

**1. Punitive Damages**

The court will first address defendants' contention that plaintiff's

---

[2]The court notes that since the parties state the correct legal standard with respect to a Rule 12(b)(6) motion to dismiss in their briefs, the court will not repeat it herein.

requests for punitive damages should be dismissed with prejudice.

Defendants state that punitive damages under the PHRA are not available against a municipality such as Susquehanna County. Plaintiff does not appear to dispute this contention. The court will therefore grant defendants' motion to dismiss all of plaintiff's claims for punitive damages under the PHRA. *See* Hills v. Borough of Colwyn, 978 F.Supp.2d 469, 483-84 (E.D.Pa. 2013);Bartlett v. Kutztown University, 2015 WL 766000, *16 (E.D.Pa. Feb. 23, 2015 ("the Third Circuit and the Commonwealth of Pennsylvania have in fact held that punitive damages are unavailable under the PHRA") (citations omitted).

Defendants also argue that plaintiff cannot recover punitive damages against them under Title VII. In Udujih v. City of Philadelphia, 513 F.Supp.2d 350, 358 (E.D.Pa. 2007), the court stated that "Title VII only contemplates employer liability, so none of the individual defendants can be subject to any damage claims, let alone claims for punitive damages, under Title VII." The court in *Udujih, id.*, also held that "when the employer is a municipality, punitive damages are not available under Title VII" (citations omitted). *See also* McNamara v. Susquehanna County, 2018 WL 2183266 (M.D.Pa. May 11, 2018).

Thus, the court will grant defendants' motion to dismiss all of plaintiff's claims for punitive damages.

**2. Claims Under Title VII**

At the outset, the court finds that Arnold and Warren cannot be sued

6

under Title VII in their individual capacities. Dici v. Com. of Pa., 91 F.3d 542, 552 (3d Cir.1996); Udujih, 513 F.Supp.2d at 358 ("Title VII only contemplates employer liability"); [Sheridan v. E.I. DuPont de Nemours and Company, 100 F.3d 1061, 1077 (3d Cir. 1996)](#) (the Third Circuit held that individual employees cannot be held liable under Title VII in their individual capacities). In fact, the plaintiff appears to concede that the individual Commissioners should be dismissed and that only the County is the proper defendant with respect to his Title VII claims. (Doc. 10 at 9). As such, the court will grant defendants' motion to dismiss both of plaintiff's claims under Title VII against Arnold and Warren in their individual capacities. *See* Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 183-184 (3d Cir. 1997) (the Third Circuit held that Congress did not intend to hold individual employees liable under Title VII); Sheridan, 100 F.3d at 1078 ("Congress did not intend to hold individual employees liable under Title VII.").

Next, the court finds that plaintiff cannot hold Arnold and Warren liable under Title VII in their official capacities. In Thourot v. Monroe Career & Technical Institute, Civil No. 14-1779, 2016 WL 6082238 (M.D.Pa. Oct. 2016), this court found that the two defendant individual employees could not be sued in their official capacity under either Title VII or the PHRA. This court in Thourot, id. at *6, explained:

> The Third Circuit has not ruled on the issue of whether or not individual supervisors may be sued in their official capacity under Title VII, though several district courts have addressed the issue directly. *Sheridan* is important to the court's analysis but not dispositive of the issue raised because it prohibits individual

capacity suits, not official capacity suits explicitly. However, the court agrees with the large majority of courts in this circuit holding that official capacity suits are not available under Title VII where the employer is named as a defendant.

Title VII prohibits employers from engaging in discriminatory practices based upon an individual's sex. 42 U.S.C. §2000e-2(a). An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." *Id.* §2000e(b). The "agent" provision of Title VII's employer definition has been construed by the Supreme Court in several instances. The Supreme Court has consistently construed the provision as a direction from Congress that Title VII be interpreted "based on agency principles" for purposes of determining liability of the employer. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 144 (2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998)); *see also Equal Opportunity Employment Comm'n v. Grane Healthcare Co.*, 2 F. Supp. 3d 667, 683 (W.D. Pa. 2014).

This court then stated that it was "persuaded by the line of reasoning provided by courts in this circuit holding that suit against an employer and against the supervisor in their official capacity is duplicative and redundant." Thourot, at *8 (string citations omitted).

This court in Thourot, id., also made the same finding as it related to the plaintiff's PHRA claim stating that a "PHRA claim and Title VII are analogous and are, typically, construed together", and that "[j]ust like in the Title VII context, it would be redundant to allow suit under the PHRA against supervisory employees in their official capacity in addition to the suit against the employer directly." (citation omitted). Thus, plaintiff Stoud cannot sue Arnold and Warren under the PHRA in their official capacities.

In Thourot, id. n. 12, this court also noted that under 43 Pa.Stat.

8

§955(e), "an aiding and abetting claim against an individual employee is viable under the PHRA." (citing *Dici v. Commonwealth of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996); *Sampson v. Methacton Sch. Dist.*, 88 F. Supp. 422, 446 (E.D. Pa. 2015); *Nolan v. Duffy*, 542 F. Supp. 2d 429, 432 (E.D. Pa. 2008)). No doubt that §955(e) prohibits "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice ..." 43 Pa.C.S. §955(e). However, the plaintiff must raise such a claim against the individual employee in his complaint. Similar to the plaintiff in *Thourot*, the court finds that Stoud has not stated an aiding and abetting claim under the PHRA against Arnold and Warren in their individual capacities.

Plaintiff only avers in both Counts that the unlawful employment practices which he alleged in his complaint constitute violations of the PHRA, citing to §955, *et seq*. Specifically, plaintiff Stoud fails to state in his complaint if he is suing Arnold and Warren in Counts III and IV under §955(e) of the PHRA, which provides for individual liability in cases where a person aids and abets discriminatory acts. Dici v. Com. of Pa., 91 F.3d 542, 552 (3d Cir.1996); Bartlett v. Kutztown University, 2015 WL 7660002015, *14 (E.D.Pa. Feb. 23, 2015) (citing Snyder v. Pennsylvania, 2010 WL 4362440 (M.D.Pa. Oct. 27, 2010) (court recognized that "the PHRA contemplates individual liability for aiding and abetting employers' violations of the PHRA")).

Thus, the court finds that plaintiff Stoud, who is represented by counsel, fails to properly state an aiding and abetting claim in Counts III and IV against

9

Arnold and Warren under §955(e) of the PHRA, in their individual capacities. Plaintiff can amend his complaint, if done within the time allotted by the court, to raise aiding and abetting claims against Arnold and Warren under §955(e) of the PHRA. However, he is forewarned that "claimants must exhaust all administrative remedies prior to filing suit under the PHRA" and, that "[a]s a requirement of exhaustion on an aiding and abetting claim, a plaintiff must specifically name all persons alleged to have committed acts of discrimination in his or her administrative complaint." Bartlett v. Kutztown University, 2015 WL 766000, *15 (E.D.Pa. Feb. 23, 2015)(internal citations omitted) (citing 43 Pa.Cons.Stat. §959). Thus, plaintiff must have named Arnold and Warren in the body of this EEOC complaint with sufficient allegations against them to satisfy the PHRA's notice requirement. *See id.* (citing Hills, 978 F.Supp.2d at 481 (dismissing PHRA claims against individual defendants when plaintiff's EEOC charges never alleged any of the individual defendants aided or abetted the named defendant); DuPont v. Slippery Rock Univ. of Pa., 2012 U.S. Dist. LEXIS 3531, at *11 (E.D.Pa. Jan. 11, 2012) (dismissing PHRA claim against university officials when the "Complaint only mention[ed] the fact that Plaintiff was being discriminated against by [the university] and its officials, not by those officials in their individual capacities.")).

Plaintiff raises two claims under Title VII, namely, a retaliation claim, Count I, and a Count II hostile work environment claim. Counts III and IV

mirror Counts I and II, except that they are under the PHRA.[3] Plaintiff essentially alleges that Arnold and Warren harassed him and retaliated against him due to his complaints about sexual harassment by Ely against one of his (plaintiff's) subordinates, McNamara, and due to his filing an EEOC complaint against the County. Plaintiff does not allege that he was the subject of any sexual harassment or discrimination.

Only the defendant County remains with respect to plaintiff's claims under Title VII and the PHRA. The court will first address plaintiff's Title VII retaliation claim.

### *A. Title VII Retaliation Claim*

Defendants argue that plaintiff's Title VII retaliation claim should be dismissed since he failed to allege that he suffered any tangible employment action or tangible job consequence as a result of the harassment and retaliation by Arnold and Warren. Defendants point out that plaintiff admits he left the position as Chief Clerk for the County and simply returned to the position of Public Safety Director and, received a new position as Chief County Detective, without suffering any consequences to his salary or benefits. Defendants also state that "plaintiff does not allege that his voluntary transfer to the District Attorney's Office was a demotion" and that he has not

---

[3]The court does not distinguish between the plaintiff's Title VII and PHRA claims because "the same standards govern each." *McNeill v. Greyhound Lines, Inc.*, 628 F. App'x 101, 103 n. 1 (3d Cir. 2015) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999)); *see also Jones v. Southeastern Pa. Trans. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015).

11

alleged that he lost any benefits or income."

In order to properly plead a retaliation claim in violation of Title VII, a plaintiff must prove a *prima facie* case by providing facts showing that: (1) he was engaged in a protected activity; (2) he has suffered an adverse employment action based on exercise of the protected activity; and (3) there is a causal link between the protected activity and the adverse employment action. *Hussein v. UPMC Mercy Hospital*, 466 Fed. Appx. 108, 111-12 (3d Cir. 2012) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)); *Farrell v. Planters Lifesavers Company*, 206 F.3d 271, 279 (3d Cir. 2000). Further, plaintiff must show a causal connection between his participation in a protected activity and the adverse employment action. *Thomas v. Pocono Mtn. Sch. Dist.*, 2011 WL 2471532, *8 (M.D.Pa. June 21, 2011). "Causation 'may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Id.* (citation omitted).

In *Mufti*, 667 F.Supp.2d at 552, the court stated:

A plaintiff must participate in a protected activity to establish a retaliation claim. *See* Barber v. CSX Distribution Services, 68 F.3d 694, 700–701 (3d Cir. 1995) (finding a general letter of complaint that did not mention discrimination was not a protected activity). Protected activity includes formal charges of discrimination "as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." *See e.g.*, Sumner v. U.S. Postal Service, 899 F.2d 203, 209 (2d Cir. 1990). However, to constitute "protected activity," the employee must also have a "good faith, reasonable belief that a

12

violation existed." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996).

The court in Larochelle v. Wilmac Corp., 201 F.Supp.3d 658, 698 (E.D.Pa. 2016), discussed the second element of a retaliation claim. The court stated that "retaliation claims—unlike other Title VII claims—do not limit adverse employment actions to those that 'affect the terms and conditions of employment.'" Id. (citing Moore, 461 F.3d at 341). The court explained that "[w]hat is required is a showing that a reasonable employee would have found the retaliatory actions 'materially adverse,' which means that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. (citations omitted).

To satisfy the third, "material adversity," element of a retaliation claim, plaintiff must prove that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Hare v. Potter, 220 Fed.Appx. 120, 128 (3d Cir. 2007) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)). Thus, "[w]ith respect to the causation component, the court must consider whether 'a reasonable jury could link the employer's conduct to the retaliatory animus.'" Id. (citing Jensen v. Potter, 435 F.3d 444, 449 n. 2 (3d Cir. 2006). "To assess this, the court may consider the 'temporal proximity' between the plaintiff's protected activity and the employer's allegedly retaliatory response, and the 'existence of a pattern of antagonism in the intervening period.'" Id. (citation omitted).

Further, "Title VII's anti-retaliation provisions [42 U.S.C. §2000e-3]

13

protect employees who oppose employment practices made illegal by Title VII." *Brangman v. Astrazeneca,* LP, 952 F.Supp.2d 710, 721 (E.D.Pa. 2013) (citation omitted). "The Plaintiff must therefore be opposing employment practices made illegal by Title VII." *Id*. (citation omitted). Also, "case law has established that opposition to an illegal employment practice must identify the employer and the practice – if not specifically, at least by context." *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc*., 450 F.3d 130, 135 (3d Cir. 2006). Moreover, "[a] general complaint of unfair treatment is insufficient to establish protected activity under Tile VII." *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc*., 450 F.3d at 135 (citations omitted). "[T]o succeed on a Title VII retaliation claim, an employee must have an 'objectively reasonable' belief that the activity he opposes constitutes unlawful discrimination under Title VII." *Ferra v. Potter*, 324 Fed.Appx. 189, 192 (3d Cir. 2009) (citation omitted). Thus, in order for plaintiff's complaints about McNamara's treatment by Ely to constitute protected activity under Title VII, a reasonable person must believe that the conduct complained of violated Title VII. *Id.* (citation omitted); *Barber v. CSX Distribution Servs*., 68 F.3d 694, 701-02 (3d Cir. 1995) (complaints about unfair treatment in general and expressions of dissatisfaction in the workplace "do[] not constitute the requisite 'protected conduct' for a *prima facie* case of retaliation.").

In *Hussein*, 466 Fed. Appx. at 112., the Third Circuit stated the following about the PHRA in relation to Title VII:

The PHRA, which we generally interpret consistently with Title VII,

likewise forbids employers from retaliating against employees for asserting their rights under the PHRA. See *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002)("The language of the PHRA is . . . substantially similar to [Title VII and other federal] anti-retaliation provisions, and we have held that the PHRA is to be [] interpreted as identical to federal anti-discrimination laws except where there is something specifically different . . . .") (citing *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996)).

The court analyzes plaintiff's Title VII retaliation claim and his PHRA retaliation claim under the aforementioned Title VII retaliation *prima facie* requirements. Based on the allegations of the complaint detailed above, the court finds that plaintiff has sufficiently alleged all of the elements of a Title VII retaliation claim against the County, including adverse employment actions. Plaintiff alleges that he was forced to leave his position Chief Clerk with the County and it is not clear, at this stage of the case, whether his new positions constituted a reassignment with significantly different responsibilities, and if there were any effects on plaintiff's salary and benefits. These issues can be addressed during discovery.

### B. Hostile Work Environment Claim

In Count II, plaintiff raises his hostile work environment claim under Title VII. In Count IV, plaintiff's hostile work environment claim is under the PHRA. Defendants argue that plaintiff's hostile work environment claims should be dismissed because he failed to allege some detrimental affect and a tangible employment action as a result of the alleged harassment.

"To succeed on a hostile work environment claim [against the employer], the plaintiff must establish that 1) the employee suffered

intentional discrimination because of [his protected characteristic], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted).

In Taylor v. JFC Staffing Assoc., 690 F.Supp.2d 357, 367-68 n. 4 (M.D.Pa. 2009), the court noted that:

> The Third Circuit has often stated that discriminatory harassment must be "severe and pervasive." *See e.g.*, Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001); West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995); Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990). But the Supreme Court's standard is "severe or pervasive." Pa. State Police v. Suders, 542 U.S. 129, 133, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). As the Third Circuit recognized in Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), "the difference is meaningful, and the Supreme Court's word controls." Id. at n. 3. By using the disjunctive "or" the Supreme Court clearly meant that "severe" and "pervasive" are alternative possibilities. In other words, some conduct, although isolated and sporadic, may be severe enough to contaminate the workplace; whereas, other, less objectionable, conduct must be pervasive in order to contaminate the workplace such that it meets the threshold under the second prong of a hostile work environment claim.

"When a workplace is so permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [a] victim's employment and create an abusive working environment, Title VII is violated." Oncale v. Sundowner Offshore Srvs., Inc., 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

16

"To establish that a supervisor's harassment culminated in a tangible employment action, 'a plaintiff must show that the tangible employment action was related to, or caused by, the alleged unlawful harassment or retaliation.'" Bumbarger v. New Enterprise Stone and Lime Co., Inc., 170 F.Supp.3d 801, 841 (W.D.Pa. 2016) (citation omitted). "The Supreme Court has clarified that an individual qualifies as a supervisor in harassment actions 'only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. at 837-38. In the present case, since the two alleged harassers are plaintiff's supervisors, the employer, i.e., the County, may be held strictly liable. Id. at 837. Also "[I] the harassment resulted in a 'tangible employment action' against the employee, then the employer is strictly liable." Minarsky v. Susquehanna County, --- F.3d ---- 2018 WL 3234243, *4 (3d Cir. July 3, 2018) (citations omitted).

"[A] court's hostile work environment analysis 'must concentrate not on individual incidents, but on the overall scenario' because it is often difficult to determine the motivation behind allegedly discriminatory actions." Syed, 906 F.Supp.2d at 355 (citation omitted). "In assessing the evidence presented, [the court] must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is ... relevant.... But while psychological harm ... may be taken into account, no single factor is required.'" [Miller v. Thomas Jefferson Hosp., 565 F.3d 88, 93 (3d Cir. 2014)](#) (citation omitted).

As discussed above, the court has found that plaintiff has sufficiently alleged that a "tangible employment action" has been taken since he alleges that the continual harassment by Arnold and Warren basically culminated in a reassignment with significantly different responsibilities. After discovery, defendants can file a summary judgment motion, if appropriate, discussing the actual duties of plaintiff's various positions with the County in order to determine if his reassignment, which he alleges was due to the harassment by Arnold and Warren, was in fact a tangible employment action. Plaintiff will be required to proffer evidence that he was reassigned with significantly different responsibilities, demoted , or caused a significant change in benefits.

Therefore, plaintiff's claims under Title VII and the PHRA against the County will proceed. Plaintiff's claims under Title VII and the PHRA against Arnold and Warren will be dismissed.

### III.   CONCLUSION

Based on the foregoing, the court will **GRANT IN PART** and **DENY IN PART** the defendants' motion to dismiss, (Doc. 8), the plaintiff's complaint, (Doc. 1), as detailed above. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 6, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-2183-01.wpd