UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT STOUD, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION - LAW |
| | : | |
| v. | : | |
| | : | |
| SUSQUEHANNA COUNTY, | : | NO. 3:17-CV-2183-MEM |
| | : | |
| Defendant | : | |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Susquehanna County, through its attorneys, Kreder Brooks Hailstone LLP, pursuant to Federal Rule of Civil Procedure 56, hereby files this Brief in Support of its Motion for Summary Judgement.

# TABLE OF CONTENTS

Page

I. Facts......................................................... 1

II. Questions Presented:

    1. Whether Susquehanna County's Motion for Summary Judgment must be granted because Plaintiff suffered no tangible employment action?

    2. Whether Susquehanna County's Motion for Summary Judgment must be granted because there is no causal connection between the alleged hostile work environment and Plaintiff's report of sexual harassment?

    3. Whether Susquehanna County's Motion for Summary Judgment must be granted because the Plaintiff was not constructively discharged?

III. Standard of Review........................................... 3

IV. Argument..................................................... 5

V. Conclusion................................................... 15

**I.     Facts:**

Plaintiff, Robert Stoud, was a Pennsylvania State Trooper from 1991 to 2012, when he retired as a Corporal. Plaintiff spent most of his career as a criminal investigator. (Stoud Depo., p. 3) Plaintiff was hired in September of 2012 as the Susquehanna County Emergency Management Coordinator and moved to Director of Public Safety in December of 2012. (Stoud Compl. ¶¶15, 16).

Plaintiff became acting Chief Clerk in June of 2014 and Chief Clerk in January of 2016 (Stoud Compl. ¶ 17) In December of 2015 Plaintiff's Administrative Assistant, Maggie McNamara ("McNamara") reported an incident regarding the inappropriate behavior of her a co-worker Richard Ely. (Stoud Compl. ¶18) Ely received a Final Written Warning from Stoud on December 30, 2015 regarding his conduct.

On June 14, 2016, Plaintiff resigned from his position as the Chief Clerk and sought transfer to the Director of Public Safety. Mr. Stoud also took the position of Chief Detective for Susquehanna County working directly with the District Attorney. On June 21, 2016, McNamara resigned her position as Deputy Chief Clerk and requested a transfer to the District Attorney's Office in the position of Victim Witness Coordinator.

Plaintiff left the position of Chief Clerk after being instructed to counsel his deputy Chief Clerk regarding several issues the Commissioners had with her work performance. Plaintiff took issue with the request and deliberately failed to perform the counseling session in good faith. (Stoud Depo. pp. 61)

Plaintiff did not provide evidence of a hostile or abusive work environment. Plaintiff did not provide evidence that the County retaliated against him because he investigated a report of sexual harassment. Plaintiff did not suffer any financial losses as a result of the transfer from Chief Clerk to County Detective

### III. Standard of Review:

Susquehanna County has moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). Only disputes over "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248–49, 106 S.Ct. 2505.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving

3

party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322, 106 S.Ct. 2548. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249, 106 S.Ct. 2505. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252, 106 S.Ct. 2505; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. Argument:

### 1. Susquehanna County's Motion for Summary Judgment must be granted because Plaintiff suffered no tangible employment action.

An "adverse employment action" by an employer is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) ). Examples of actionable adverse decisions include denial of a raise or promotion; failure to rehire; discharge; demotion; suspension without pay; and transfer with detrimental collateral consequences. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

Stoud, when he became annoyed with the actions of his employers, was able to dictate the terms of his transfer back to Director of Public Safety and Chief Detective of the County. Both positions were clearly more in keeping with his prior training and employment. Stoud was never transferred or demoted by the Commissioners, but instead he insisted on his transfer. Additionally, Stoud never suffered any financial losses as a resuslt of his decision to transfer. Instead he benefitted financially from the move.

To establish a hostile work environment under Title VII and the PHRA, a plaintiff must allege, inter alia, that the discrimination faced was severe or pervasive as determined by the totality of the circumstances. Mandel v. M & Q

Packaging Corp., 706 F.3d 157, 163, 167 (3d Cir. 2013). Relevant factors in this determination include "the frequency of the ... conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id at 168.

Here, Plaintiff alleges that Commissioner Warren may have been overly critical of him. Plaintiff also alleges that Commissioners Arnold believed he was too close to his subordinate, Maggie McNamara. Ms. McNamara has also filed suit against the County alleging almost identical claims.

These incidents, while annoying and possibly embarrassing, do not rise to the level of humiliating or threatening, and did not unreasonably interfere with Stoud's job. Jennings-Fowler v. City of Scranton, 680 F. App'x 112, 117 (3d Cir. 2017). In fact, both Commissioner Warren and Commissioner Arnold were well within their rights as an employer to make such criticism. Plaintiff's only complaint about Commissioner Warren is that she was overly critical to his subordinate, Commissioner Arnold stated that she believed the relationship between Stoud and McNamara was inappropriate. He was told that his behavior around his subordinate did not seem professional or appropriate. These facts do not establish a hostile work environment. Possibly embarrassing, but not actionable.

For harassment to be actionable it must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986). The United States Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2284, 141 L. Ed. 2d 662 (1998). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Whether an environment is hostile or abusive can be determined only by looking at all of the circumstances. Id. at 23. The circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

In the instant case, the harassment at issue consists of Plaintiff's concerns that the Commissioners were being too critical of his deputy and rumors about the plaintiff. Plaintiff was not physically threatened or humiliated. Instead he

7

complains about utterances he found offensive. Theses incidents do not support a hostile work environment claim.

"Harassment is pervasive where incidents of harassment occur with regularity." Endres v. Techneglas, Inc., 139 F.Supp.2d 624, 631 (M.D.Pa.2001). In the instant case, the plaintiff points to a handful of rumors about him. However, he has not pointed to evidence regarding how frequently she heard these rumors. See, Treaster v. Conestoga Wood Specialties, Corp., No. 4:09-CV-00632, 2010 WL 2606479, at *16–17 (M.D. Pa. Apr. 29, 2010), report and recommendation adopted, No. 4:09-CV-632, 2010 WL 2606481 (M.D. Pa. June 25, 2010)

It is well-settled that "an employee's voluntary resignation does not constitute an adverse employment action" unless the employee can demonstrate she was constructively discharged. Larochelle v. Wilmac Corp., 210 F.Supp.3d 658, 705 (E.D.Pa. 2016); Checa v. Drexel Univ., No. 16-108, 2016 WL 3548517, at *5 (E.D.Pa. 2016) ("Our Court of Appeals has not recognized voluntary resignations to be adverse employment actions."). However, even if Plaintiff's voluntary transfer to a difference department within the County can be considered an adverse employment action, the Plaintiff must present facts that prove that there was a causal connection between his participation in the protected activity and the

adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006).

**2. Susquehanna County's Motion for Summary Judgment must be granted because there is no causal connection between the alleged hostile work environment and Plaintiff's report of sexual harassment**.

Title VII prohibits an employer from "discriminat[ing] against any individual... because [he] has opposed any practice made an unlawful employment practice...or because [he] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing...." 42 U.S.C. § 2000e–3(a). A plaintiff alleging a claim for retaliation must demonstrate that:

1) he engaged in activity protected by Title VII; 2) the employer took an adverse employment action against him; and 3) there was a *causal connection* between his participation in the protected activity and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006).

Plaintiff undisputedly engaged in a protected activity when he investigated a report of alleged sexual harassment. However, as stated above, Plaintiff is unable to demonstrate that he was subjected to an adverse employment action. Plaintiff voluntarily resigned from his position as Chief Clerk and returned to a position which he had demanded that the County hold for him if the position of Chief Clerk

didn't work out. (Stoud Depo., p. 30, lns 1-7). He remained a Susquehanna County employee and his salary increased. He would eventually leave the County, voluntarily, but not because of the issues he has raised in his complaint. In fact he would leave his positions of Chief Detective and Director of Public Safety because he didn't get along with the newly appointed District Attorney, (Stoud Depo., pp. 36-37). Stoud also testified that he understood that once he became Acting Deputy Chief Clerk, the new Chief Clerk, Lana Adams, had a problem with him. (Stoud Depo., p, 35, lns 16-23).

More importantly for the action at bar, Plaintiff must present evidence of a causal link between the alleged adverse employment action and his participation in the protected activity. The third element that a plaintiff must establish for a prima facie case of retaliation is to show "that there is a causal connection between the protected activity and the adverse action." <u>Fasold v. Justice</u>, 409 F.3d 178, 188 (3d Cir. 2005). One means of establishing a causal connection between the protected activity and adverse action is to demonstrate temporal proximity between these events. See, e.g., <u>Shaner v. Synthes</u>, 204 F.3d 494, 505 (3d Cir.2000). Demonstrating an employer's continued pattern of antagonism after the employee's protected activity may also establish the requisite causation. See Robinson v.

Southeastern Pennsylvania Transp. Auth., Red Arrow Div., 982 F.2d 892 (3d Cir.1993).

In order to show the causal link, Plaintiff must show some connection between the investigation of the alleged sexual harassment and the adverse employment action. Plaintiff can use temporal proximity to show the connection. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). However, here, the allegation was made in December of 2015 and Plaintiff voluntarily resigned and transferred in June of 2016, 6 months after the investigation. Additionally, his resignation came only two weeks after he was directed by the Susquehanna County Commissioners to counsel his Deputy Chief Clerk regarding several issues with her work performance Stoud was adamant that he did not believe his deputy had done anything wrong and did not perform the counseling session in good faith. He would subsequently demand the return to the Director of Public Safety and become the County's Chief Detective. He would follow his deputy, Maggie McNamara, to the District Attorney's Office. Plaintiff would also state that his one critic among on the three commissioners, Commissioner Arnold, would only learn about the sexual harassment investigation months after she took office. (Stoud Depo., p. 17, lns 8-13). Clearly no temporal proximity exists.

Where there is no temporal proximity, Plaintiff must then show causation by pointing out evidence of retaliatory animus in the intervening time. <u>Robinson v. Southeastern Pa. Transp. Auth.</u>, 982 F.2d 892, 894 (3d Cir.1993). Plaintiff has alleged that Commissioner Arnold claimed that his relationship with his subordinate was unprofessional. However, apart from this criticism, Plaintiff could not point to any other retaliatory animus by the Commissioners. In fact, Plaintiff was not even aware whether Commissioner Arnold even knew about the complaint, but informed her himself months after she became Commissioner. Stoud has presented no evidence from which a that a reasonable juror could conclude that his investigation of the sexual harassment complaint of his deputy was the cause of the alleged adverse employment action.

3. **Susquehanna County's Motion for Summary Judgment must be granted because the Plaintiff was not constructively discharged.**

Constructive discharge requires a finding that "the employer knowingly permitted a condition of discrimination in employment so intolerable that a reasonable person subject to them would resign." <u>Angeloni v. Diocese of Scranton</u>, 135 Fed.Appx. 510, 513 (3d Cir. 2005). However, "employees are not guaranteed stress-free environments" and "discrimination laws cannot be transformed into a palliative for every workplace grievance, real or imagined, by

the simple expedient of quitting." Connors v. Chrysler Financial Corp., 160 F.3d 971, 976 (3d Cir. 1998) The Connors Court states that "[i]ntolerability is addressed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign,-that is, whether he would have had no choice but to resign. Id at 976.

Plaintiff's claim is one of constructive discharge because he alleges he had to transfer to the District Attorney's Office. The Third Circuit has stated that Courts should consider the following factors in assessing whether an employee was constructively discharged:

whether the employer (1) threatened [the employee] with discharge or urge[d] or suggest[ed] that she resign or retire, (2) demote[d] her, (3) reduce[d] her pay or benefits, (4) involuntarily transferred [her] to a less desirable position, (5) altered her job responsibilities, or (6) gave unsatisfactory job evaluations. Colwell v. Rite Aid Corp., 602 F.3d 495, 502 (3d Cir. 2010).

As the 3rd Circuit has noted, a stressful work place does not amount to a constructive discharge. Duffy v. Paper Magic Grp., Inc., 265 F.3d 163, 170 (3d Cir. 2001). Here, Plaintiff had demanded, prior to taking the position as Chief Clerk, that he be allowed to return to the position of Director of Public Safety if the Chief Clerk position didn't work out. He exercised that option shortly after failing to counsel his subordinate as directed by his superiors. He never planned to remain in the position of Chief Clerk. The annoyance he felt toward the

Commissioners was his justification for going back to a job for which he was much more qualified.

Additionally, even though Plaintiff may have subjectively considered the criticism of the way he acted with his subordinate to constitute a hostile work environment, it clearly does not rise to the level that would force a "reasonable person to resign." <u>Angeloni</u>, supra. The Third Circuit, when applying these principles has noted that an employee/plaintiff has to show more than mere discomfort or frustration in order to defeat a motion for summary judgment and show that the hostility has continuous and pervasive. <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1084–85 (3d Cir. 1996).

Plaintiff's claim must be dismissed because his complaints boil down to unhappiness with from his employers. He demanded the ability to transfer out of the chief clerk role as a requirement for taking the position. Stoud worked for the County for an additional year and only left because he had issues with the newly appointed DA. Clearly, his situation was not unbearable. Plaintiff was never assigned degrading or menial tasks and consistently received pay increases. These circumstances do not raise to the level of constructive discharge. See <u>Duffy</u>, 265 F.3d at 169.

No reasonable jury could conclude that plaintiff's working conditions were so intolerable that he had no choice but to resign from his position as Chief Clerk.

V.  **Conclusion**:

Susquehanna County's Motion for Summary Judgment must be granted because Plaintiff suffered no tangible employment action; because there is no causal connection between the alleged hostile work environment and Plaintiff's reporting of an alleged sexual assault; and because Plaintiff was not constructively discharged.

                                                    KREDER BROOKS HAILSTONE LLP

220 Penn Avenue, Suite 200  
Scranton, PA 18503         BY: /s/A. James Hailstone  
(570) 346-7922                 A. James Hailstone  
                                       Attorney I.D. #80055  
                                       Attorneys for Defendant

# CERTIFICATE OF SERVICE

AND NOW, this 2nd day of May, 2019, A. James Hailstone, a member of the firm of Kreder Brooks Hailstone LLP, electronically filed the foregoing Brief in Support of the Motion for Summary Judgment with the Clerk of the United States District Court for the Middle District of Pennsylvania using the CM/ECF system which sent notification of such filing to the following Filing Users at the following e-mail address(es):

Gerard M. Karam, Esquire
Mazzoni, Karam, Petorak & Valvano
321 Spruce Street, Suite 201
Scranton, PA 18503
570-348-0776
gkaram18@msn.com
*ATTORNEYS FOR PLAINTIFF*

                                               /s/ A. James Hailstone
                                               A. James Hailstone
                                               Attorney I.D. #80055
                                               Attorneys for Defendant