IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT STOUD | CIVIL ACTION |
| Plaintiff | |
| v. | |
| SUSQUEHANNA COUNTY | |
| Defendant | No. 3:17-CV-2183-MEM |

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

**Facts**

On November 29, 2017, the Plaintiff filed his complaint against the Defendants. The complaint presents the following causes of action: Count I – Title VII/Retaliation; Count II – Title VII/Discrimination/Hostile Work Environment; Count III – PA Human Relations Act/Retaliation; and Count IV – PA Human Relations Act/Hostile Work Environment.

The Plaintiff was Acting Chief Clerk and Director of Public Safety for Susquehanna County. He then became Chief Clerk/Director of Public Safety. Stoud was then demoted to Deputy Chief Clerk while maintaining the Director of Public Safety position. He then took a position in the District Attorney's Office as county detective while again maintaining the Public Safety position.

1

In short, the Plaintiff alleges that after he was made aware of inappropriate conduct by a subordinate and reported the same to the Defendant Commissioners, he was subjected to increasing and pervasive harassment and retaliation by the Defendant Commissioners.

The retaliatory and harassing actions against Plaintiff included, but were not limited to, personal and derogatory comments made against him by Defendant Commissioner Arnold and Defendant Commissioners Arnold and Warren undermining his authority as Chief Clerk.

In June 2016, Plaintiff was demoted from the position of Director of Public Safety/Chief Clerk to Director of Public Safety/Deputy Chief Clerk.  Plaintiff did not want to be demoted to Deputy and wanted to keep his title and responsibilities.

Stoud then took the position of Chief Detective for Susquehanna County working in the District Attorney's Office.  As part of a meritless witch hunt directed by Commissioner Arnold, Stoud was suspended from his position as Chief Detective while an investigation took place – an investigation that result in no findings against Stoud.

## QUESTION PRESENTED

**Question Presented:**  Whether Defendant's Motion for Summary Judgment should be denied because the Plaintiff suffered a tangible employment action.

**Suggested Answer:**  *In the affirmative.*

**Question Presented:** Whether Defendant's Motion for Summary Judgment should be denied because a causal connection between the hostile work environment and Plaintiff's report of sexual harassment exists

**Suggested Answer:** *In the affirmative*.

**Question Presented:** Whether Defendant's Motion for Summary Judgment should be denied because the Plaintiff was constructively discharged.

**Suggested Answer:** *In the affirmative*.

## ARGUMENT

## LEGAL STANDARD TO GRANT SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In Anderson, the Court explained that the judge's role when adjudicating a motion for summary judgment is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Id. at 249. In making this determination, a court is to draw all reasonable inferences in favor

of the non-moving party.  Berner Int'l Corp. v. Mars Sales Co., 987 F.2d 975, 978 (3d Cir. 1993).

Because a dispute over material facts, explained below, exists between the parties, summary judgment is not appropriate.

### THE PLAINTIFF SUFFERED AN ADVERSE EMPLOYMENT ACTION AND THE DISCRIMINATION WAS PERVASIVE AND REGULAR

In order to establish a hostile work environment claim, a Plaintiff must show that (1) she suffered intentional discrimination because of a protected characteristic; (2) the discrimination was pervasive and regular; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there's a basis for vicarious liability. Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir 2001); Jensen v. Potter, 435 F.3d 444, 448 (3d Cir. 2006).

Under Title VII, an adverse employment action may include something less than discharge, such as a demotion or job transfer, even without a loss of pay or benefits.  Jones v. School Dist., 198 F.3d 403. 411-12 (3d Cir. 1999).

Here, the Plaintiff suffered an adverse employment action under the law. Specifically, in his deposition, the Plaintiff testified that as a result of his demotion to Deputy Clerk, he lost responsibilities. (See Plaintiff's deposition attached hereto and incorporated herein as **Exhibit A** at p. 32).  Under the law, this demotion and loss of responsibilities qualifies as an adverse employment action under Title VII.

4

To prove a hostile work environment claim, a Plaintiff must show, *inter alia*, that his workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002). Factors which may indicate a hostile work environment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). In assessing the severity of alleged discriminatory treatment, the court must consider the totality of the circumstances. Caver v. City of Trenton, 420 F.3d 243, 262-63 (3d Cir. 2005).

If supervisors create the hostile working environment, the employer is strictly liable. Jensen, 435 F.3d at 448.

Here, the harassment was frequent, severe, pervasive, and humiliating. Plaintiff testified from the early part of 2016 to May of 2016 he was subject to scrutiny, harassment, and retaliation. (Stoud Deposition at p.16). This conduct by Commissioners Arnold and Warren continued unabated and got progressively worse over time. (Stoud Deposition at p.16). This included Arnold making comments to Plaintiff's subordinates about Plaintiff and his deputy having an affair. (Stoud Deposition at p.19). Arnold's actions went so far as Arnold stating

she wanted to fire the Plaintiff and her stating she wanted to break up the Plaintiff and his deputy to save their marriages. (Stoud Deposition at p.20). Commissioner Arnold's improper conduct continued after Stoud left for a position in the District Attorney's Office. (Stoud Deposition at p.33).

The depositions of the Susquehanna County Commissioners corroborate the Plaintiff's claims.

In her deposition, Commissioner Warren testified that the harassment was constant. (See Commissioner Warren's deposition attached hereto and incorporated herein as **Exhibit B** at p. 17). Commissioner Warren also testified that Commissioner Arnold alleged an affair between the Plaintiff and his subordinate. (Warren Deposition at p.19). Warren admitted that the rumors of an affair perpetuated by Arnold undermined Stoud's authority and credibility. (Warren Deposition at p. 37-38).

Commissioner Warren testified that Commissioner Arnold was warned to stop spreading the rumor of the affair (Warren Deposition at p. 41-42). Warren also testified that when Stoud was demoted to Deputy Clerk, he lost supervisory duties. (Warren Deposition at p. 41). She went on to state that Arnold wanted to remove as many responsibilities from Stoud as she could. (Warren Deposition at p.44).

Outrageously, Commissioner Arnold testified that she spread the rumor of an affair between Plaintiff and his deputy with others, including the two other Commissioners and other county employees. (See Commissioner Arnold's deposition attached hereto and incorporated herein as **Exhibit C** at p. 37-38). She admitted that her actions in spreading the rumor undermined Stoud's authority as Chief Clerk. (Arnold Deposition at p. 39). She further admitted to wanting to remove responsibilities from Stoud, which she ultimately did. (Arnold Deposition at p. 48-49). Finally, she testified as to an incident between Stoud and a female employee in which, even though that employee was wrong, Arnold remarked, "us girls need to stick together." (Arnold Deposition at p. 53).

Commissioner Hall also testified that Arnold had insinuated the Plaintiff and McNamara were having an affair and that he told Commissioner Arnold to stop her behavior because it was wrong. (See Commissioner Hall's deposition attached hereto and incorporated herein as **Exhibit D** at p. 27 and 41). Hall stated that Arnold told him (and Hall then told Stoud) that Arnold believed she had to break up Stoud and McNamara to save Stoud's marriage. (Hall Deposition at p. 36).

Hall also testified that Arnold had a personal animus against Stoud. (Hall Deposition p. 17-18), and that Arnold, early in her tenure, told the County HR Director she wanted to fire him. (Hall Deposition at p. 18). Further, Commissioner Hall testified that, against the County Solicitor's advice,

Commissioners Warren and Hall agreed to retrieve Stoud's work emails. (Hall Deposition at p. 45). This led to unfounded allegations against Stoud that caused him to be suspended from his position in the District Attorney's Office pending an investigation, which included a criminal investigation. (Hall Deposition at p. 48).

Stoud was cleared in both the criminal and administrative investigations. This would be expected as Stoud served over 20 years with the Pennsylvania State Police earning the rank of Corporal and had an impeccable record.

As is clear from the above, the harassment was severe and frequent. This included the spreading of a rumor about the Plaintiff having an affair with a subordinate, which would certainly undermine Plaintiff's credibility.

## A CAUSAL CONNECTION BETWEEN THE HOSTILE WORK ENVIRONMENT AND PLAINTIFF'S REPORT OF SEXUAL HARASSMENT EXISTS

To assert a Title VII retaliation claim, the Plaintiff must show (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between Plaintiff's participation in the protected activity and the adverse employment action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006).

Title VII's anti-retaliation provision forbids an employer from discriminating against any employee because he opposed any practice made an unlawful employment practice by Title VII or because he made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a). Acts of retaliation qualify as adverse employment actions if they might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Moore, supra at 341. For purposes of discrimination claims under Title VII, an adverse employment action may include something less than discharge, such as a demotion or job transfer, even without a loss of pay or benefits. Jones v. School Dist., 198 F.3d 403. 411-12 (3d Cir. 1999).

Protected activity may include participation in a Title VII investigation, proceeding, or hearing by making a charge, testifying or otherwise assisting. See, Robinson v. Southeastern Pa. Trans. Auth., 982 F.2d 892, 896 n.4 (3d Cir. 1993).

To establish an adverse employment action, a plaintiff must demonstrate that the defendant's conduct had some material, employment-related impact. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300-01 (3d Cir. 1997). Retaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment. Id. at 1300.

Here, the Plaintiff suffered an adverse employment action under the law. Specifically, in his deposition, Plaintiff testified that he was demoted to Deputy Clerk and lost job responsibilities. (Stoud Deposition at p. 32). Under the law, this demotion qualifies as an adverse employment action under Title VII.

A plaintiff must establish a causal connection between his participation in a protected activity and the adverse employment action he suffered. Evidence of temporal proximity, a pattern of ongoing antagonism, or other types of circumstantial evidence supporting the inference may support an inference of casual connection. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000).

Here, Plaintiff testified that once he investigated the complaint about Richard Ely, scrutiny, harassment, and retaliation began. Stoud testified that Commissioner Hall indicated Commissioner Arnold's actions stemmed from the Ely matter. (Stoud Deposition at p. 17-18). This conduct snowballed to Commissioner Arnold insinuating and outright stating Plaintiff was having an affair with his deputy. Even Commissioner Hall's deposition makes clear that the retaliatory conduct continued throughout 2016.

The record makes absolutely no reference to any harassing or retaliatory conduct *prior* to Plaintiff investigating McNamara's complaint. The conduct at issue all began after McNamara made the complaint about Ely. The record establishes a temporal proximity and a pattern of ongoing antagonism.

Defendant argues that the Plaintiff's demotion to Deputy Chief Clerk was a voluntary choice. This is without merit. As outlined in detail above, the Plaintiff was subjected to six months of harassment and retaliatory conduct by

10

Commissioners Arnold and Warren. Stoud did not want to be demoted to Deputy and wanted to keep his title and responsibilities.

Furthermore, the Defendant's own Solicitor sent a letter on November 1, 2016 stating Commissioner Arnold's actions towards Stoud were "retaliatory and created a hostile work environment" and directed Commissioner Arnold to cease and desist from communication with Stoud that could be deemed "unprofessional, hostile or retaliatory." (See Solicitor Giangrieco's letter attached hereto and incorporated herein as **Exhibit E**).

Once the defendant offers evidence of evidence of legitimate reasons for the adverse employment actions, plaintiff is given an opportunity to demonstrate that the reasons offered are pretextual. See, Jones, 198 F.3d at 410. The plaintiff may, but need not, introduce new evidence to carry this burden. The court may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). The court must determine whether the plaintiff provided evidence sufficient for a jury to conclude that the defendant's stated reasons for the adverse employment actions were actually a pretext for retaliation. See, Jones, 198 F.3d at 413. A plaintiff will defeat a motion for summary judgment if she can point to evidence from which the factfinder could reasonably either: (1) not believe the employer's

11

stated reasons; or (2) believe that invidious retaliation was more likely the employer's motivation. Id.

It is submitted that the reasons offered by the Defendant for the adverse employment action is merely pretextual. The evidence in the matter indicates as much. Therefore, it is submitted that evidence exists from which the factfinder could either not believe the Defendant's stated reasons or believe that retaliation was more likely the Defendant's motivation. This is enough then to defeat the Defendant's Motion for Summary Judgment as a genuine issue of material fact exists.

A recent decision out of the Fourth Circuit in Parker v. Reema Consulting Services, No. 18-1206 (4th Cir. Feb. 8, 2019) is both persuasive upon this Court and relevant to this matter. In Parker, the Court held that employers may be liable under Title VII of the Civil Rights Act for failing to effectively address and stop gossip and rumors of an alleged sexual relationship between a female employee and a male supervisor.

Two weeks after a female employee's promotion, male employees began circulating false rumors that she obtained her position because of a sexual relationship with a high-ranking male manager. That manager also allegedly participated in spreading the rumor by holding a meeting where the rumor was discussed.

The Parker Court held that Parker sufficiently alleged a hostile work environment based on sex, and that complaints about such harassment were protected activity for the purpose of a retaliation claim.

Here, we have a supervisor of the Plaintiff's, Commissioner Arnold, who testified in her deposition that she herself spread a rumor that the Plaintiff was having an affair with a co-worker/supervisor. Commissioner Arnold testified that she spread the rumor by telling both the other two Susquehanna County Commissioners and other Susquehanna County employees. (Arnold Deposition at p. 37-38).

Rather than attempting to stop the gossip and rumors surrounding the Plaintiff and her co-worker/supervisor, Commissioner Arnold took an active role to perpetuate the gossip and rumors. Due to this outrageous conduct, it is submitted that summary judgment is not appropriate in this matter and the Defendant's motion be denied.

### THE PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED

A constructive discharge occurs when working conditions are so intolerable that a reasonable employee is forced to resign. DiFiore v. CSL Behring, LLC, 879 F.3d 71 (3d Cir. 2018). Constructive discharge essentially occurs when the employer permitted conditions so unpleasant or difficult that a reasonable person

would have felt compelled to resign.  Wiest v. Tyco Electronics Corp., 812 F.3d 319, 331 (3d Cir. 2016).

An objective test is used to determine whether an employee can recover on claim of constructive discharge.  Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001).  Factors relevant to this issue are whether the employer 1) threatened the employee with discharge or urged or suggested that the employee resign or retire; 2) demoted the employee, 3) reduced the employee's pay or benefits; 4) involuntarily transferred the employee to a less desirable position; 5) altered job responsibilities; or 6) gave unsatisfactory job evaluations.  Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993).

The harassing and retaliatory conduct Plaintiff faced after investigating McNamara's complaint about Ely has been well documented above, including Commissioner Arnold spreading rumors of an affair.  Plaintiff was then demoted to Deputy Chief Clerk with a loss of responsibilities.

Plaintiff testified that the working environment under Commissioners Warren and Arnold was too toxic to stay even as Deputy Clerk, which led to the transfer to the District Attorney's Office.  (Stoud Deposition at p. 34-35).  Arnold's wrath followed Stoud to the District Attorney's Office, as when a new District Attorney friendly with Commissioner Arnold took office, Arnold began appearing in the District Attorney's Office.  (Stoud Deposition at p. 36-37).  Stoud felt that

given the close association and Arnold's influence, it was best he leave his position at the District Attorney's Office. (Id.)

Based on the intolerable and toxic working conditions created by Commissioners Warren and Arnold, Plaintiff had no other option than to transfer to the District Attorney's Office with reduced responsibilities. Any reasonable person would have felt compelled to transfer out of that environment if working under these unpleasant and difficult conditions. Furthermore, the threat of a termination loomed as it was likely the votes existed to carry out such an act.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment must be denied.

Respectfully Submitted:

/s/ Gerard M. Karam, Esquire
Gerard M. Karam, Esquire
Atty. ID# PA 49625


/s/ Christopher J. Szewczyk, Esquire
Christopher J. Szewczyk, Esquire
Atty. ID # PA 306689
Mazzoni, Karam, Petorak, and Valvano
321 Spruce Street
Suite 201
Scranton, PA 18503
P: (570) 348-0776
F: (570) 348-2755

## CERTIFICATE OF SERVICE

I, Gerard M. Karam, Esquire, hereby certify that I have served a true and correct copy of the foregoing document via electronic service/ECF system on the 21st day of May, 2019.

                                                        /s/ Gerard M. Karam, Esquire
                                                        Gerard M. Karam, Esquire