**EXHIBIT A**

I, Patricia Staples have been asked to review the handling of an employee relations mater related to the complaint filed by Robert Stoud and provide my opinion on how it was handled and/or mishandled.

Complaint

Mr. Stoud has filed a complaint against Susquehanna County, Commissioner Elizabeth Arnold and Commissioner Mary Ann Warren for creating a hostile work environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Pennsylvania Human Relations Act and other applicable federal and state law.

In preparation I have reviewed the following documents:

Complaint, Robert Stoud

Deposition, Robert Stoud

Complaint, Maggie McNamara

Deposition, Maggie McNamara

Deposition, Elizabeth Arnold

Deposition, Richard Ely

Deposition, Alan Hall

Deposition, MaryAnn Warren

Brief in Opposition to Defendant's Motion for Summary Judgment – Stoud vs. Susquehanna County

The basis for the claim stems from a complaint filed in December 2015 when Mr. Stoud was the Acting Chief Clerk. The complaint was filed by Maggie McNamara, Deputy Chief Clerk against Richard Ely, Director of Veteran's Affairs. Her complaint was of unwanted sexual advances to her by Mr. Ely. She reported the incidents to Mr. Stoud her supervisor, he reported her complaint to the commissioners and investigated of the incident. It concluded with a final written warning being issued to Mr. Ely by Mr. Stoud.

What follows is a description of some of the incidents Stoud has referred to in support of his claim and my opinions in Mr. Stoud's complaint.

During the months that followed, Stoud states Commissioners Arnold and Warren made personal derogatory remarks against him undermining his authority as Chief Clerk. The comments referenced his personal appearance, how he interacted and the fact that he is not from this county.

On May 31, 2016 Stoud makes an official complaint to Commissioner Hall and Solicitor Giangrieco of harassing and retaliatory behavior by the other two commissioners.

At a meeting in early June 2016 Commissioner Warren told Stoud McNamara needed to be terminated due to problems with her work, specifically the agendas for Commissioners meetings Stoud defended her as a good worker. They said she was disrespectful to a manager. The conversation continued and either Commissioner Arnold or Warren referenced the fact that Stoud and McNamara frequently met, suggesting an inappropriate relationship. Stoud said he would not terminate McNamara and felt this was continuation of harassing and retaliatory behavior. At that meeting Stoud inquired about returning to the Director of Public Safety position as that was agreed upon when he assumed the Chief Clerk position. He was told something to the effect, I'm not certain there will be that position. He perceived this as a threat.

Following that meeting Commissioner Hall approached Stoud and told him Arnold and Warren wanted him to conduct write-ups on McNamara and himself. He originally refused to do the write-ups, saying it was illegal action and continued harassment. He was told if he didn't write her up, she would be fired. Stoud was given a list of items to be included in each of the write-ups, which included disrespectful to workers for McNamara and defense of a subordinate for him.

From the limited information I have read it does not indicate McNamara's performance rises to a level where termination is appropriate. The plaintiff cited examples of where McNamara has copied previously approved documents which are no longer acceptable, which lends one to believe they are changing the expectations without informing the employee. It appears to me there is virtually no one-on-one communication of work expectations. It would seem the expectations for the agendas should have been reviewed with Stoud and McNamara. A reasonable person would comply with expectations if they are explained and communicated effectively. Have other county employees been terminated for similar performance issues?

Stoud being given a directive to conduct a disciplinary write up on himself is nothing I have ever witnessed. Disciplinary actions are delivered from a supervisor to a subordinate. The Commissioners in this case seem to be very straightforward and vocal in their opinions, so why would they not conduct a write up if they believed it was warranted?  I do not have a copy of the handbook for the county, but I would not expect, nor have I ever seen defense of a subordinate's work as grounds for disciplinary action nor a self-administered progressive discipline policy.

Stoud was threatened and given an ultimatum that if he did not write up McNamara she would be fired. This is another example of behavior that interferes with work or creates an intimidating, hostile or offensive work environment.

While Stoud perceived the fact that he was told the Director of Public Safety position may not be available a threat, absent an employment agreement/contract there are no guarantees.

Stoud was ultimately demoted to the Deputy Clerk position. In Warren's deposition she stated that Stoud performed well at every job he was given, he wrote excellent letters and picked up slack when needed. He was a good Chief Clerk, never written up and she believed no disciplinary actions taken against him. When asked why he was demoted she said Hall told her he wanted to advertise for a Chief Clerk because Steve was going back to Public Safety and the position would not be an open position. She did speak with Stoud about being demoted and why

he was doing it. Stoud repeated the reason given by Hall. She asked Stoud if he was okay with it, she didn't think he answered but felt his body language suggested no. Lana Adams was then hired.

Investigation of Emails between Stoud and McNamara

According to the deposition of Warren, she stated that Lana Adams, Chief Clerk spoke with her that her Deputy Chief Clerk, Stoud had little or no communication with her and did she have suggestions for improving the situation. Warren suggested perhaps having access to emails between Stoud, the previous Chief Clerk and McNamara may provide some insight. She states Commissioner Arnold agreed to this approach. Hall and the Solicitor did not agree. It went before Robin Reed who approved that decision.

According to Arnold's deposition she stated the decision to review the emails between Stoud and McNamara was to ensure that McNamara not only did not have access to that email or files anymore, and there was a question whether McNamara may still have been doing work in the Commissioner's Office.

I believe that neither of these constitute legitimate business reasons for gaining access to emails between two employees. The first is the most unorthodox and ridiculous approach for helping a manager to improve communications with a direct report. The logical method would be to meet one-on-one with the employee to outline the expectations for what needs to be communicated and when and how. Following up with on-going two-way communication and regular meetings to discuss progress and new assignments is the preferred approach. As the Chief Clerk, Adams had the authority to establish expectations and take disciplinary action when those expectations were not met.

Secondly, if there was any question of access to files or email by McNamara the IT Director would certainly be able to determine that without retrieving and reviewing individual emails.

The depositions provide conflicting information as to who was charged with this task as no one was clear as to whether Stephen Janoski or Lisa Kowalewski was the Director of IT at the time. It was also not made clear if all the emails were indeed transferred to Lana Adams email account. Nor was there any conclusion as to the exchange of emails between Stoud and McNamara.

As a result of this process, Lisa Kowalewski did perform an unauthorized background check on Stoud from her home computer. She alleged that Stoud was receiving kickbacks on behalf of people doing business with the County. Stoud was suspended. Following the investigation, he was cleared of any wrongdoing, but not without personal embarrassment, question to his character and having the effect of undermining his authority. Kowalewski was ultimately fired for her actions.

Actions of Commissioner Arnold

There was an instance in which Arnold was verbally abusive to Stoud in his office. Warren was present during that exchange which she said was in no way precipitated by any action on Stoud's part.

There was meeting in June 2016 with all the Commissioners and Stoud shortly after Stoud had expressed his concerns of working in a hostile environment. Arnold referenced the fact that Stoud made the complaint and she accused him of causing the hostile work environment.

Warren states that Arnold in a meeting indicated that she wanted to have the personnel responsibilities removed from Stoud as he had too much control. She said the commissioners needed to control more of the personnel happenings in the county. Warren in her deposition stated she was not supportive of it saying Stoud treated people well, negotiated well for the county and needed to stay there.

Arnold questioned Stoud's subordinates of the need for the Director of Public Safety position, a role that Stoud held in addition to that of Chief Clerk.

According to Commissioner Hall's deposition he states he told Stoud that Commissioner Arnold told him that they have to break Stoud and McNamara up in order to save Steve's marriage. Hall told Arnold to stop making those type of statements as they could be very detrimental.

Arnold admitted she talked with Giangrieco, Conklin and Krupinski about Stoud's relationship with McNamara intimating an inappropriate relationship. When asked if she ever as his supervisor asked Stoud about it, she said no. She did agree that by talking with his subordinates she is undermining his authority.

There was a discussion between Stoud and Kowalewski, IT Director that got very heated. It was witnessed by Conklin and she concluded Kowalewski acted inappropriately. Arnold's comment in response to the story was to the effect that, us girls have to stick together. When questioned she said she guessed she would have to hear Kowlaski's side of the story in order to decide on the truth.

On October 26, 2016 Arnold entered Stoud's office and Warren was present. There were back to back meetings she was to attend, and she questioned him to confirm the the construction meeting and he said he assumed she wouldn't attend. She responded to him in a very sharp manner. She returned later and entered into a discussion about their earlier exchange. This ended with Arnold asking for an apology. Conklin was witness to this encounter. Stoud wrote Arnold a letter stating she was disrespectful to him and Warren as a witness also reported it in a letter. As a result, she was issued a letter from Solicitor Giangrieco addressing her most recent contact and communication with Stoud. That conversation witnessed by others was described as

unprofessional and upsetting to not only Stoud but the witnesses. The letter references the fact that this behavior was angry and unprofessional and of a personal nature after she had been put on notice of his filing of his complaint with the EEOC. It references the fact that it had been previously discussed with her the need to cease and desist from any communication with him that could be perceived as hostile or retaliatory as it could increase the county's exposure to increased liability. She was also requested to cease and desist communication with employees concerning employment, wage or benefit issues and follows the rules and protocol. She was told that all communications regarding these issues should be directed to the Chief Clerk or the Director of Human Resources.

Arnold's actions indicate a limited understanding of basic management principals. She appears to be a poor role model who circumvents the basic chain of command. Rather than handling an employee relations issue with the concerned employee, she solicits subordinate employees for their opinions. In Halls' deposition he states that she went to the Public Safety department 2 or 3 levels down and was speaking with them about personnel issues and other issues with the County. She was given a letter from the Solicitor that she was to follow the chain of command.

It appears that she has a personal dislike for Stoud and her actions towards him are reflective of her personal feelings as opposed to specific work-related issues. In Hall's deposition he states that Arnold made comments to the Human Resource Director that she wanted Stoud fired.

Additional Conclusions

It is my opinion based upon the materials I have reviewed that:

Stoud experienced a harassing and hostile work environment the timing of which supports his involvement in the investigation of the complaint of unwanted sexual advances raised by McNamara. This is a violation of Title VII of the Civil Rights Act of 1964.

Stoud complained to Commissioner Hall that he was experiencing retaliation for defending McNamara from the harassment she was experiencing. This is a violation of Title VII of the Civil Rights Act of 1964

Stoud experienced ongoing harassing and retaliatory actions in the form of personal and derogatory comments by Arnold and Warren. This is a violation of his rights under Title VII of the Civil Rights Act of 1964.

Stoud made a formal internal complaint of a hostile work environment. Arnold confronted him for making the comment and then told another employee she wanted him fired. This is a violation of Title VII of the Civil Rights Act of 1964.

Stoud continued to experience a hostile work environment and retaliation following his filing of a complaint with the EEOC. This is a violation of Title VII of the Civil Rights Act of 1964.

Submitted by: