UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT STOUD** | : |
| Plaintiff | : CIVIL ACTION NO. 3:17-2183 |
| v. | : (JUDGE MANNION) |
| **SUSQUEHANNA COUNTY,** | : |
| Defendant | : |

# MEMORANDUM

Presently before the court are three motions *in limine* filed by the defendant Susquehanna County, (Doc. 66; Doc. 68; Doc. 70), and one motion *in limine* filed by the plaintiff Robert Stoud, (Doc. 64). For the reasons set forth below, the motions will be **GRANTED IN PART** and **DENIED IN PART**.[1]

## I. LEGAL STANDARD

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted

---

[1] The facts and procedural history of this case were set forth in the court's memorandum dated July 7, 2020, (Doc. 56), and the court need not repeat it herein except to note that the County is the only remaining defendant in this case and the only remaining claims are Stoud's Title VII and Pennsylvania Human Relations Act ("PHRA") retaliation claims in Counts I and III, as well as the Title VII and PHRA hostile work environment claims in Counts II and IV of the complaint.

evidence." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017). On a motion *in limine*, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995); *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." *Ridolfi v. State Farm Mutual Auto. Ins. Co.*, 2017 WL 3198006, *2 (M.D.Pa. July 27, 2017). Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.* (citation omitted).

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." *Tartaglione*, 228 F.Supp.3d at 406 (citation omitted). "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

## II. DISCUSSION

### a. Future Earnings

In one of its motions *in limine*, (Doc. 70), the County seeks an advance ruling precluding Stoud from presenting a claim at trial for loss of future earnings since he has not presented any evidence on future earnings or front pay and should not be permitted to speculate.

In response, Stoud contends that he should not be precluded from doing so because, on July 14, 2020, he provided the County a breakdown of damages in an email. In light of the fact that expert testimony is not required to present evidence of front pay damages to a jury, Stoud argues that the County has ample time to prepare any necessary cross-examination on the issue of loss of future earnings.

The Third Circuit has held, "[I]t is well settled that the risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim." *Bartek v. Urban Redevelopment Authority of Pittsburgh*, 882 F.2d 739, 746 (3d Cir.1989) (internal quotation marks omitted). Thus, "[w]hile the risk of any speculation in the calculation of damages is upon the employer, the victim ha[s] the initial burden of identifying those positions upon which an award of damages is to be based." *Id.*

At this point, the court agrees that, while Stoud has not yet presented evidence of his loss of future earnings, he is entitled to do so at trial, and he is not required to utilize an expert to do so. *See id.* As long as Stoud has some personal knowledge of his salary and his loss of income, which he presumably does, Stoud may present his own testimony in support of this argument. *See* Fed.R.Evid. 602 (requiring a witness have personal knowledge of the matter about which he is testifying). Insofar as the County predicts this evidence will be speculative or conclusory, that argument pertains to the weight of the evidence presented, which is a question solely for the jury. Accordingly, the court will **DENY** the County's motion, (Doc. 70), regarding future earnings.

### b. Attorney-Client Privilege

Both parties' have submitted motions *in limine* related to attorney-client privilege regarding Stoud's desire to call Attorney Michael Giangrieco, who previously served as the County's Solicitor, as a witness at trial.

In his motion *in limine*, (Doc. 64), Stoud argues that, despite his former position as County Solicitor, he should be permitted to call Attorney Giangrieco as a witness. Stoud anticipates that the County will object, citing attorney-client privilege; however, Stoud counters this noting that Attorney Giangrieco filed a complaint against the County on May 19, 2020, (Doc. 64-

1), in which Attorney Giangrieco states he repeatedly spoke to Commissioner Arnold about her actions that were contrary to County policy and could potentially expose the County to liability. Stoud cites the fact that, in his complaint, Attorney Giangrieco indicates that his conversations with Commissioner Arnold were not part of his job duties because there was another attorney, one appointed by the County's insurance company, who was responsible for controlling Commissioner Arnold's actions related to litigation against the County. Stoud notes that there was in fact another attorney, Attorney Robin Reed, who represented the County in EEOC actions with Stoud and Maggie McNamara. Thus, because of County's retention of Attorney Reed, Stoud argues no attorney-client privilege exists related to Attorney Giangrieco.

Even if the privilege did exist, however, Stoud argues that the crime-fraud exception applies to defeat the privilege. This is so, Stoud argues, because Attorney Giangrieco states in his complaint that the documents prepared for the County's responses to two EEOC complaints were false, inaccurate, and did not reflect the facts given by him and others, that he and others saw the responses and knew they was false, and that he and others were asked to lie and change their prior statements in order to protect Commissioner Arnold. Because lying and falsifying legal documents are

crimes, Stoud argues the crime-fraud exception applies and defeats the attorney-client privilege.

Relatedly, Stoud seeks an advance ruling on whether he may question Commissioners Hall, Arnold, and Warren about the County's EEOC responses and their knowledge of any lies or inaccuracies in them. Stoud contends that this line of questioning would not violate attorney-client privilege because it, too, falls under the crime-fraud exception.

The County, in response, (Doc. 77), and in its own motion *in limine*, (Doc. 66), argues that the fact additional counsel was retained does not mean that Attorney Giangrieco was not the County Solicitor and still acting as the County's attorney when providing advice to the Commissioners. The County argues that Attorney Giangrieco cannot "pick and choose when he is acting as the County's attorney." (Doc. 77, at 2). With regard to the crime-fraud exception, the County argues that there must be evidence beyond an accusation to defeat the privilege and that Stoud has offered no evidence beyond the statements of the County's "disgruntled former employee"—*i.e.*, Attorney Giangrieco. (Doc. 77, at 3).

In his response, Stoud repeats his earlier arguments but additionally contends that the County waived its privilege because, in their depositions, Commissioners Hall and Warren disclosed confidential communications with

Attorney Giangrieco. For example, Stoud notes that Commissioner Hall recounted conversations between Attorney Giangrieco, Commissioner Arnold, and himself regarding Commissioner Arnold's treatment of Stoud. Thus, Stoud contends that the privilege was waived with respect to all communications pertaining to Stoud's employment with the County.

The attorney-client privilege, which protects confidential communications between client and attorney, is strictly construed. *United States v. Doe*, 429 F.3d 450, 454 (3d Cir. 2005). "A principal and reasonable exception is that the privilege may not be used for the purpose of obtaining advice to promote crime or fraud. Although broad, the privilege does not allow a client to shield evidence of an intent to use an attorney's advice to further a criminal purpose." *Id.* Thus, a crime-fraud exception applies to those communications "between an attorney and client that are intended to further a continuing or future crime or tort." *Id.* (internal quotation marks omitted). In determining whether the exception applies,

> "the client's intention controls and the privilege may be denied even if the lawyer is altogether innocent." *In re Grand Jury Proceedings*, 604 F.2d 798, 802 (3d Cir.1979). The privilege is not lost if the client innocently proposes an illegal course of conduct to explore with his counsel what he may or may not do. Only when a client knowingly seeks legal counsel to further a continuing or future crime does the crime-fraud exception apply.

*Doe*, 429 F.3d at 454. In order to determine whether the exception applies, the court must apply the reasonable basis test. *In re Grand Jury*, 705 F.3d 133, 155 (3d Cir. 2012). The "party seeking to apply the crime-fraud exception must demonstrate that there is a reasonable basis to suspect (1) that the privilege holder was committing or intending to commit a crime or fraud, and (2) that the attorney-client communication or attorney work product was used in furtherance of that alleged crime or fraud." *Id.*

Here, the court disagrees with Stoud that the attorney-client privilege does not apply to Attorney Giangrieco's communications with County employees merely because the County hired additional outside counsel. Thus, the communications between the Commissioners and Attorney Giangrieco about legal matters are covered by the privilege. The court, however, agrees with Stoud that he should be permitted to question both Attorney Giangrieco and the Commissioners with respect to those matters that fall within the crime-fraud exception. For example, Stoud indicates that he wishes to question Attorney Giangrieco and the Commissioners about Attorney Giangrieco's allegations that he and other employees saw the County's EEOC responses and knew portions of them were false, that he and other employees asked that the falsities be corrected, and that he and other employees were asked to lie and change statements to protect

Commissioner Arnold. Such communications between Attorney Giangrieco and County employees and/or the Commissioners and the outside counsel would fall squarely within the category of "communications between attorney and client where the client's purpose is the furtherance of a future intended crime or fraud." *Consultation in furtherance of crime or fraud*, 1 MCCORMICK ON EVID. §95 (8th ed.).

The court finds that Stoud has demonstrated via Attorney Giangrieco's complaint, (Doc. 64-1), that there is a reasonable basis to suspect that County employees intended to commit a crime—to wit, falsify legal documents—despite Attorney Giangrieco's and others' apparent advice to the contrary and that Attorney Giangrieco's responses, albeit falsified, were used in furtherance of that crime under the guidance of an attorney. This evidence supports a waiver of the attorney-client privilege.

Accordingly, the County's motion, (Doc. 66), is **DENIED**. Stoud's motion is **GRANTED IN PART** to the extent that he will be permitted to call Attorney Giangrieco and the Commissioners as witnesses and question them with respect to the aforementioned communications.

### *c. Expert Evidence Regarding Proper Human Resources Procedures*

Finally, Stoud argues that the County should not be permitted to submit any evidence related to proper human resources or management procedures at trial because, while Stoud complied with the court's June 17, 2019 order, (Doc. 48),[2] and timely submitted the expert report, (Doc. 69-1), and curriculum vitae of his expert, human resources specialist Patricia Staples, the County has not done so.

In its response, (Doc. 79), the County argues that the mere fact it made the decision not to retain an expert does not mean it can be precluded from discussing proper human resources and management procedures or the County's policies and procedures.

The County additionally filed its own motion *in limine*, (Doc. 68), seeking to prelude Stoud from introducing Staples's report and testimony. The County argues that her expert report makes biased credibility determinations and includes improper legal conclusions. For example, the County argues that a section of Staples's report "simply re-states several allegations made by [Stoud] and declares that they constitute a violation of Title VII[.]" (Doc. 69, at 3). The County argues that the majority of the report

---

[2] The court's June 17, 2020 order required that the County's expert reports, if any, be submitted by August 16, 2019. (Doc. 48).

is merely a recitation of the allegations in Stoud's Complaint, as well as statements from his deposition which, if accepted into evidence, will risk misleading the jury by "uncritically lending of veneer of truth to those assertions whose determination is in the province of the jury." (Doc. 69, at 4). Finally, the County argues that the report improperly blames the actions of third parties on the County and relies, at least in part, on a confidential attorney-client privileged letter sent from Attorney Giangrieco to the Commissioners—a letter which Stoud agreed was privileged.

Stoud, in response, argues that Staples's testimony is relevant because human resources and management policy is a factual issue here and Staples has specialized knowledge that will assist the jury in understanding the evidence. Stoud, however, states he would agree to redacting certain portions of the report if he is permitted to introduce ten areas of the report that he has highlighted which, he argues, are necessary to assist the jury. These areas include the following:

    (1) Derogatory comments by Commissioners Arnold and Warren referencing Stoud's personal appearance, how he interacted, and that he is not from Susquehanna County;
    (2) McNamara's performance not rising to a level where termination was appropriate;
    (3) The lack of one-on-one communication of work expectations and/or changing expectations that were not reviewed with Stoud or McNamara;

(4) That the defense of a subordinate's work is not grounds for disciplinary action;
(5) That a self-administered progressive disciplinary policy is "not normal";
(6) The threats and ultimatums to Stoud that he would be fired if he did not discipline McNamara—this being an example of an intimidating, hostile, or offense work environment;
(7) That there was no legitimate business reason to gain access to Stoud and McNamara's emails;
(8) Commissioner Arnold's admission that she talked with others about Stoud having an inappropriate relationship with McNamara thereby undermining his authority;
(9) That Commissioner Arnold's actions indicated that she had a limited understanding of basic management principles and was circumventing the chain of command; and
(10) That Commissioner Arnold personally disliked Stoud and her actions toward him were reflective of her personal feelings, as opposed to specific work-related issues.

(Doc. 76-1, at 2-6).

The standard of admissibility for expert testimony is governed by the Federal Rules of Evidence, specifically Rule 702, and the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or

> data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

The Third Circuit has interpreted Rule 702, as analyzed in *Daubert* and its progeny, to include "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." *Elcock v. Kmart Corp*, 233 F.3d 734, 741 (3d Cir. 2000). The proponent of the expert "bears the burden of establishing the reliability and admissibility of the expert's testimony by a preponderance of the evidence." *Burke v. TransAm Trucking, Inc.*, 617 F.Supp.2d 327, 331 (3d. Cir. 2009). Rule 702 has a liberal policy favoring admissibility. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir.2008).

### i. Qualifications

In order for a witness to be qualified as an expert, "he must first be qualified by virtue of specialized expertise." *Elcock*, 233 F.3d at 741. The standard to be qualified as an expert was articulated by the Third Circuit as follows:

> Rule 702 requires the witness to have specialized knowledge regarding the area of testimony. The basis of this specialized knowledge can be practical experience as well as academic training and

> credentials. We have interpreted the specialized knowledge requirement liberally, and have stated that this policy of liberal admissibility of expert testimony extends to the substantive as well as the formal qualification of experts. However, at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman . . . .

*Id.* (internal citations and quotation marks omitted).

Here, Stoud argues that Staples has specialized knowledge in human resources and management beyond the common sense of a lay juror that will help the jury understand the County employees' actions toward Stoud. Stoud, however, does not elaborate on how she attained this specialized knowledge and, therefore, the court is unable to determine whether Staples is qualified in those areas.

### ii. Reliability

The reliability threshold in Rule 702 "requires expert testimony to be 'based on the methods and procedure of science, not on subjective belief and unsupported speculation.'" *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833-34 (3d. Cir.2020) (internal quotation marks omitted). "Courts look for rigor, not mere haphazard, intuitive inquiry." *Id.* (internal quotation marks omitted). The court is required to determine

whether the expert's testimony is supported by "good grounds." *Id.* (internal quotation marks omitted).

Both the Supreme Court in *Daubert* and the Third Circuit have explained that many factors ought to be considered when determining whether an expert's testimony is based on "good grounds." *Id.* These factors include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Id.* at 834 (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 247-48 (3d Cir.2008). No one factor is dispositive, but the court is required to analyze these factors to some extent. *UGI Sunbury*, 949 F.3d at 834.

Once again, Stoud has not provided any information that sheds any light into Staples's methodology other than her report which indicates that she reviewed various legal filings in this case. (Doc. 76-1, at 2). Upon review of the report, (Doc. 76-1), the court must agree with the County that it consists almost entirely of recitations of Stoud's allegations followed by a

- 15 -

conclusion that the actions taken by County employees were inappropriate. It does not appear to the court that Staples's report gives any additional insight into the issues of this case beyond that which could be provided by an ordinary lay witness. Moreover, the court agrees with the County that presenting Stoud's allegations in the context of an expert report would tend to lend a veneer of truth to those assertions and would indeed be prejudicial to the County.

Accordingly, the court will **GRANT WITHOUT PREJUDICE** the County's motion to preclude the introduction of Patricia Staples's testimony and report. (Doc. 68). In the event Stoud can establish the qualifications, reliability, and fit of Staples as an expert witness, he may move to introduce her as an expert witness at a later time, provided he has complied with the disclosure requirements of Rule 26 Federal Rule of Civil Procedure.

Finally, with respect to the portion of Stoud's motion *in limine*, (Doc. 64), that seeks to preclude the County from submitting any evidence related to proper human resources and management procedures at trial, the motion is **DENIED**. Although Stoud argues that the County did not "comply" with the court's June 17, 2019 order and timely submit an expert report, the introduction of evidence related to proper human resources and management procedures does not necessarily require an expert witness and

the County does not indicate that it intends to introduce such evidence via an expert witness. Accordingly, the County will not be precluded from introduction of such evidence.

### III. CONCLUSION

For the above stated reasons, Stoud's motion *in limine*, (Doc. 64), is **GRANTED IN PART** and **DENIED IN PART**. The County's motion *in limine* regarding future earnings, (Doc. 70), is **DENIED**. The County's motion *in limine* regarding attorney client privileged material, (Doc. 66), is **DENIED**. The County's motion *in limine* regarding Stoud's expert report, (Doc. 68), is **GRANTED WITHOUT PREJUDICE** to Stoud to move to for the admission of Staples as an expert witness.

An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 13, 2020**
17-2183-03