## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT STOUD | CIVIL ACTION |
| Plaintiff | |
| v. | |
| SUSQUEHANNA COUNTY | |
| Defendant | No. 3:17-CV-2183 |

### PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37 and FED. R. CIV. P. 11 and MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12

NOW COMES, the Plaintiff, Robert Stoud, by and through his counsel, and in support of this motion, avers as follows:

### MOTION FOR SANCTIONS: DISCOVERY VIOLATION UNDER

### FED. R. CIV. P. 37

1. On or about August 17, 2018, the undersigned served defense counsel with a Request for Production of Documents.  A copy of the request is attached hereto and incorporated herein as **Exhibit A**.

2. The request, at Request 1, sought "Any and all documents pertaining to the Plaintiff, Robert Stoud, including, but not limited to, his personnel file."

3. The Defendant submitted its response to the document request on September 10, 2019.

4. On July 27, 2020, this Court entered an Order (Doc. 60) allowing limited discovery to take place subsequent to the Court's discovery deadline.

5. The July 27, 2020 Order allowed the parties to conduct discovery limited to the allegations contained in Michael Giangrieco's complaint.   Giangrieco's complaint alleged that in response to an EEOC complaint filed by the Plaintiff, Robert Stoud, the Defendant, County of Susquehanna, filed false documents with the EEOC.

6. On December 8, 2020, at a deposition of former Susquehanna County Commissioner Mary Ann Warren, it was discovered that the deponent, along with fellow Commissioner Alan Hall and Director of Human Resources Jeanne Conklin, sent letters and/or emails to insurance adjusters at the County Commissioners Association of Pennsylvania (CCAP).  CCAP provides the insurance coverage for the Defendant as it pertains to the instant case.

7. Former Commissioner Warren indicated that the aforementioned letters and/or emails sent to the CCAP insurance adjusters related to the "many inaccuracies" and falsehoods contained in a position paper that was submitted to the Equal Employment Opportunity Commission (EEOC) in response to the complaint submitted by the Plaintiff herein.

8. At said deposition on December 8, 2020, James Hailstone, Esquire, counsel for the Defendant indicated he was unaware of the aforementioned letters and/or emails.

9. On December 9, 2020, the undersigned received from Attorney Hailstone three letters and/or emails from Susquehanna County Commissioners, Mary Ann Warren and Alan Hall, as well as County Human Resources Manager Jeanne Conklin outlining known falsehoods and inaccuracies in the Defendant's filed response to the Plaintiff's EEOC complaint.

10. The letter of Commissioner Alan Hall is attached hereto and incorporated herein as **Exhibit B.** In his deposition on December 11, 2020, Commissioner Hall attested to the truthfulness of Exhibit B.

11. The letter of Commissioner Mary Ann Warren is attached hereto and incorporated herein as **Exhibit C.** In her deposition on December 9, 2020, Commissioner Warren read the letter into the record and attested to its truthfulness.

12. The letter of Chief of Human Resources Jeanne Conklin is attached hereto and incorporated herein as **Exhibit D.**

13. These letters and/or emails were sent from the authors to Susquehanna County's insurance claim adjusters at CCAP.

14. In a deposition conducted on December 10, 2020, Commissioner Alan Hall, author of Exhibit B herein, indicated that he forwarded Exhibit B to Defendant's counsel James Hailstone via email more than one year ago.

15. On Friday, December 11, 2020, without request or communication from Plaintiff or his counsel, Susquehanna County Commissioner Alan Hall delivered an envelope with four documents in it to the Plaintiff's home.

16. Upon receipt of the four documents, Plaintiff called Commissioner Hall regarding said documents and Commissioner Hall stated to Plaintiff:

> "I am tired of all the lying and covering up. I want to make sure that I am providing all the information that was requested of me at the deposition. Being that it is three years later, I forgot that there were more documents than I said until I went back and checked."

17. Stoud indicates that Commissioner Hall then stated that all of the documents were sent by him to CCAP and Attorney Hailstone over one year ago.

18. The 4 documents delivered by Commissioner Hall to Plaintiff's home are attached hereto and incorporated herein as **Exhibits E, F, G, and H.** All of the said documents relate to falsehoods contained in the Defendant's EEOC response.

19. On Sunday, December 13, 2020, without request or communication from the undersigned attorneys, Commissioner Alan Hall sent Attorney Gerard Karam an email wherein Exhibits E, F, G and H herein were attached. A copy of said email is attached hereto and incorporated herein as **Exhibit I.**

4

20. Commissioner Hall in his email to Karam expressed concern that these documents had not been supplied to the undersigned and indicated he did not "want to be part of a lie or coverout." He went on to say that the documents were first sent to CCAP and then on later date sent to Attorney Hailstone.

21. On December 13, 2020, Commissioner Hall forwarded a second email to Karam indicating the documents in question were sent to CCAP on June 6, 2017. A copy of said email is attached hereto and incorporated herein as **Exhibit J**.

22. Attorney Karam did not respond to said emails. Attorney Hailstone was notified of said emails on December 14, 2020.

23. Commissioner Hall called Attorney Karam at his office on December 14, 2020. Prior to any conversation, Attorney Karam informed Commissioner Hall he could not speak with him because Commissioner Hall is an employee of Susquehanna County who is represented by Attorney Hailstone. As such, no substantive conversation occurred.

24. Exhibits E, F, and G were never turned over to Plaintiff's counsel by the defense.

25. Exhibit H appears to be the same document supplied to Plaintiff on December 9, 2020 and marked herein as Exhibit B.

26. It should be noted that Exhibits B through G, which were concealed from the Plaintiff for over 15 months, not only revealed falsehoods in Defendant's EEOC filing, but also had the majority of Susquehanna County Commissioners confirm the allegations contained in Plaintiff's United States District Court complaint.  Thus the apparent motivation to conceal these documents.

27. These letters and/or emails provided to Plaintiff's counsel on December 9, 2020 and the documents delivered by Commissioner Hall on December 11, 2020 should have been provided in response to the Plaintiff's Request for Documents on September 10, 2019, but were omitted in Defendant's response.

28. It is believed, and therefore averred, that the Defendant knew of the existence of these letters and/or emails provided to Plaintiff's counsel on December 9, 2020 and the documents delivered by Commissioner Hall on December 11, 2020 at the time of the September 10, 2019 discovery response, but failed to provide the same or identify the same and assert any privilege preventing disclosure.

29. It is believed, and therefore averred, that if the Defendant learned of the existence of the aforesaid letters and/or emails provided to Plaintiff's counsel on December 9, 2020 and the documents delivered by

Commissioner Hall on December 11, 2020 after the September 10, 2019

response, it had a duty to provide the same or identify the same and assert

any privilege preventing disclosure.

30. It is believed, and therefore averred, that the reason the Defendant did not

provide the letters and/or emails provided to Plaintiff's counsel on

December 9, 2020 and the documents delivered by Commissioner Hall on

December 11, 2020 or identify them as privileged is because the content of

these letters affirm the allegations contained in Plaintiff's complaint.

31. Fed. R. Civ. P. 37(c) allows for sanctions if a party fails to provide

information.

32. It is submitted that the 15 month concealing of these documents, and the less

than voluntary production of said documents, warrants sanctions against the

Defendant.

33. Two overarching standards guide the exercise of discretion when it comes to

the imposition of sanctions: First, any sanction must be "just"; second, the

sanction must be specifically related to the particular "claim" which was at

issue in the Order to provide discovery.  Ins. Corp. of Ireland, Ltd. v.

Compagnie Des Bauxites, 456 U.S. 694, 707 (1982).

34. Within the context of these two overarching principles, the court is to assess

the culpability of the offending party and the prejudice to the party

7

seeking sanctions. See, <u>Estate of Spear v. Commissioner of Internal Revenue</u>, 41 F.3d 103, 111 (3d Cir. 1994).

35. The court has a variety of sanctions it may impose, depending upon the degree of culpability and the extent of the prejudice.  See Fed. R. Civ. P. 37(b)(2).  The more severe the sanction, the greater the culpability and/or the prejudice must be.  <u>Estate of Spear</u>, 41 F.3d at 111.

36. The sanctions levied by this Court should include, but not be limited to, the following:

   a.  Direct that the designated facts regarding Defendant's violations of Title VII and the Pennsylvania Human Relations Act as to retaliation and hostile work environment be taken as established for purposes of this action, as the Plaintiff claims;

   b.  Prohibit the Defendant from opposing Plaintiff's evidence of Defendant violating Title VII and the Pennsylvania Human Relations Act as to retaliation and hostile work environment or from introducing facts in rebuttal into evidence;

   c.  Prohibiting the Defendant from opposing or presenting evidence in opposition to the documents that were concealed;

   d.  Informing the jury of the concealment of the documents;

e.  Finding that the conduct of the Defendant was willful, outrageous, wanton, malicious, oppressive, and/or in reckless disregard of the Plaintiff's rights for the purposes of punitive damages.

f.  Rendering a default judgment against the Defendant.

g.  Attorney's fees.

WHEREFORE, the undersigned respectfully request that this Honorable Court grant the Motion for Sanctions, grant the remedies requested, and award attorney's fees and costs for the investigation, research, and presentation of this Motion.

## MOTION FOR SANCTIONS: FALSE FEDERAL FILING WITH THE EEOC PURSUANT TO FED. R. CIV. P. 11

37. The previous paragraphs are incorporated herein by reference as if the same were set forth at length herein.

38. According to Fed. R. Civ. P. 11(b), by presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

a.  It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation

(herein, Plaintiff's counsel has made great efforts with Defendant to amicably resolve all matters relating to sanctions motions);

b. The claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

c. The factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

d. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

39. Pursuant to Fed. R. Civ. P. 11(c)(1), if, after notice and reasonable opportunity to respond, the court determined that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

40. Under Fed R. Civ. P. 11(c)(4), a sanction under Rule 11 must be limited to what suffices to deter repetition of the conduct or comparable conduct by other similarly situated.  The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or

all of the reasonable attorney's fees and other expenses directly resulting from the violation.

41. The guiding purpose in fixing Rule 11 sanctions is fashioning a sanction adequate to deter undesirable future conduct. DiPaolo v. Moran, 407 F.3d 140 (3d Cir. 2005).

42. Claims under Title VII must begin with a complaint filed with the EEOC.

43. Part of the reasoning Title VII claims begin with a complaint filed to the EEOC is to resolve cases prior to a District Court filing, so as not to overburden the Courts and allow Courts to run efficiently as well as preventing unnecessary costs, delay, and stress to claimants.

44. The Defendant's false filing as is evidenced by the letters from a majority of the Susquehanna County Commissioners prevented any fair ruling or potential resolution at the EEOC level.  It is noted that while Commissioner Warren and Commissioner Hall are a majority for these matters, they are not members of the same political party.

45. Defendant responded to the Plaintiff's EEOC filing with a false response filing.  A copy of the Defendant's EEOC response is attached hereto and incorporated herein as **Exhibit K**.

46. Defendant was put on notice in writing that their EEOC filing was false by a majority of the County Commissioners of Susquehanna County and the

County's Human Resource Manager. Defendant improperly concealed these documents from Plaintiff.

47. CCAP's and Defendant's scienter regarding the false EEOC response is further evidenced by a November 1, 2016 letter sent from County Solicitor Michael Giangrieco, as directed by the majority County Commissioners to Commissioner Elizabeth Arnold. A copy of said letter is attached hereto and incorporated herein as **Exhibit L**.

48. Said letter concludes that Commissioner Arnold's behavior towards Plaintiff was retaliatory and created a hostile work environment. Importantly, said letter states it was only sent after discussion with CCAP's and the Defendant's counsel.

49. The Defendant's false filing to the EEOC led to this lawsuit being filed in the United States District Court for the Middle District of Pennsylvania.

50. Had the Defendant corrected their false EEOC filing as they were begged to do so by a majority of the County Commissioners of Susquehanna County, and the County's Human Resource Manager, this matter likely never would have necessitated a District Court filing.

51. Comparing the Defendant's false EEOC response with the letters from the majority of the County Commissioners of Susquehanna County and the

Human Resources Manager, the falsehoods not corrected include, but are not limited to, the following:

a. The EEOC response indicates Stoud did not want to work with Commissioner Arnold.  The attached letters and emails state that Stoud was more than willing to work with Commissioner Arnold and developed strategies and made every effort to work with and get along with Commissioner Arnold. The majority Commissioners were clear that Commissioner Arnold personally disliked Plaintiff and not vice versa.

b. The EEOC response portrays the change of command policy as being created by Stoud.  The attached letters and emails indicate that the chain of command policy comes from, and is implemented by, the County Commissioners.

c. The EEOC response indicates that Plaintiff requested his demotion to the position of Deputy Chief Clerk.  This allegation is proven false by the attached letters and/or emails.

d. The EEOC response states that on more than one occasion Plaintiff refused to brief Commissioner Arnold.  The response portrayed this as Stoud's inability to get along with Arnold.  The attached letters and/or emails indicate that Arnold rarely attended daily briefings and that the

13

majority of the Commissioners directed Stoud not to give Arnold her own private briefings in order to encourage Arnold to go to the briefings.

e.  The EEOC response says it serves as Susquehanna County's position statement.  A governing majority of the County Commissioners disagreed with this statement and the contents of the response.  This false response was submitted based on what is financially best for CCAP and not on what the truth is as per the governing majority of County Commissioners.

f.  The majority Commissioners made it clear to CCAP and the Defendant that all policies and direction are the responsibility of the governing majority of the County Commissioners.  Paragraph 8 of CCAP's and Defendant's response is replete with falsehoods regarding systems and policies created by Stoud.  CCAP and Defendant were put on notice by the governing majority that these systems and policies were put in place by the County Commissioners.

g.  Paragraph 5 of the response gives the false impression that Mr. Ely made only one attempt to kiss Maggie McNamara.  Indeed there were 2 attempts.

h. CCAP's and Defendant's response indicates that power given to the Chief Clerk creates tension in the relationship with the Commissioners. The governing majority of Commissioners make it clear that much of the Chief Clerk's power or authority comes from the Pennsylvania County Code and that the power and authority of the Chief Clerk does not create tension.

i. CCAP's and Defendant's response states Stoud was given carte blanche by previous Commissioners. The governing majority of Commissioners indicate this is false as Plaintiff always followed the directives and policies of the Commissioners and did not act independently.

52. The attached exhibits show a troubling pattern of the Defendant and CCAP conspiring to disregard the truth at all costs in order to defend the illegal conduct of one Commissioner. The concealing of these letters and the failure to correct the false federal EEOC filing is in furtherance of this conspiracy.

53. The bad faith intent of the Defendant and CCAP is further evidenced by the following:

a. In the letter attached hereto as Exhibit C, former Commissioner Mary Ann Warren stated the following in describing a meeting she had with

the Defendant's former counsel and author of the EEOC response: "When I told the truth of what I'd witnessed, she yelled at me for siding with Stoud."

    b.  In the letter attached hereto as Exhibit D, Jeanne Conklin, in describing a phone call with CCAP adjusters, indicated "at times, I felt that they were trying to manipulate my words to paint a skewed version of the truth."

    c.  In a conversation with Plaintiff on December 11, 2020, Commissioner Alan Hall stated: "I am tired of all the lying and covering up."

54. The Defendant has had ample opportunity to amend its false filing with the EEOC and has failed to do so.

55. Defendant's and CCAP's failure to correct a false federal filing and to continue to convey falsehoods warrants sanctions.

56. The sanctions levied by this Court should include, but not be limited to, the following:

    a.  Direct that the designated facts regarding Defendant's violations of Title VII and the Pennsylvania Human Relations Act as to retaliation and hostile work environment be taken as established for purposes of this action, as the Plaintiff claims;

b. Prohibit the Defendant from opposing Plaintiff's evidence of Defendant violating Title VII and the Pennsylvania Human Relations Act as to retaliation and hostile work environment or from introducing facts in rebuttal into evidence;

c. Prohibiting the Defendant from opposing or presenting evidence in opposition to the documents that were concealed;

d. Informing the jury of the concealment of the documents;

e. Finding that the conduct of the Defendant was willful, outrageous, wanton, malicious, oppressive, and/or in reckless disregard of the Plaintiff's rights for the purposes of punitive damages.

f. Rendering a default judgment against the Defendant.

g. Attorney's fees.

WHEREFORE, the undersigned respectfully request that this Honorable Court grant the Motion for Sanctions, grant the remedies requested, and award attorney's fees and costs for the investigation, research, and presentation of this Motion.

## MOTION FOR JUDGMENT ON THE PLEADINGS
## PURSUANT TO FED. R. CIV. P. 12

57. The previous paragraphs are incorporated herein by reference as if the same were set forth at length herein.

58. On or about August 6, 2018, this Court issued an Order (Doc. 21) that, inter alia, required the Defendant, Susquehanna County, to file its answer to the Plaintiff's Complaint within 14 days of the date of said Order.

59. The deadline for the Defendant's response was August 20, 2018.

60. As of the filing of this Motion, Defendant has yet to file its answer.

61. It is believed, and therefore averred, that the Defendant did not file its answer because it filed a false answer with the Equal Employment Opportunity Commission (EEOC) related to the Plaintiff's claims filed thereto.

62. Defendant was put on notice in writing of the false claims in their federal EEOC filing by a majority of the County Commissioners in Susquehanna County and the Chief of Human Resources of Susquehanna County, yet the Defendant did not amend the false federal filing.

63. It is believed, and therefore averred, no answer was filed in this matter because the content of the letters attached to this motion as exhibits would require admissions to many allegations made in the Plaintiff's Complaint.

64. According to Fed. R. Civ. Proc. Rule 8(b)(6), an allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.  See also, Petrunich v. Sun Bldg.

<u>Sys.</u>, No. 3:CV-04-2234, 2006 U.S. Dist. LEXIS 69043 (M.D. Pa. Sep. 26, 2006).

65. According to Fed Rules Civ. Proc. Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed and early enough not to delay trial.

66. It is submitted the pleading deadline is closed.

67. It is submitted that the filing of this motion will not delay trial in this matter.

68. It is submitted that given the Defendant's concealment of evidence as outlined above, judgment on the pleadings is an appropriate remedy.

WHEREFORE, the undersigned respectfully request that this Honorable Court grant the Motion for Judgment on the Pleadings.

<div style="margin-left: 40%;">

Respectfully Submitted:

/s/ Gerard M. Karam, Esquire
Gerard M. Karam, Esquire
Bar I.D. # PA 49625
gmk@mkpvlaw.com

/s/ Christopher J. Szewczyk, Esquire
Bar I.D. # PA 306689
cjs@mkpvlaw.com
Mazzoni, Karam, Petorak, and Valvano
321 Spruce Street - Suite 201
Scranton, PA 18503
P: (570) 348-0776
F: (570) 348-2755

</div>

Date: December 21, 2020

## **CERTIFICATE OF NON-CONCURRENCE**

The undersigned hereby certifies that on December 14, 2020, he contacted

A. James Hailstone, Esquire requesting concurrence in the foregoing motion.

Attorney Hailstone does not concur in Plaintiff's request.


/s/ Gerard M. Karam, Esquire
Gerard M. Karam, Esquire
Mazzoni, Karam, Petorak, and
Valvano
321 Spruce Street
Suite 201
Scranton, PA 18503
(570) 348-0776

Dated:  December 21, 2020

## <u>CERTIFICATE OF SERVICE</u>

I, Gerard M. Karam, Esquire, hereby certify that I have served a true and correct copy of the foregoing document via electronic service/ECF system on the 21st day of December, 2020.

<u>/s/ Gerard M. Karam, Esquire</u>
Gerard M. Karam, Esquire