**Exhibit E**

#1

This letter is being offered in response to the email from Attorney Reed to CCAP Jennifer Ulsh dated May 5, 2017.

In paragraph 3 Attorney Reed states that Ely tried to attempt to kiss her, or hug her, in her car. The part that was left out was, that he approached her at her desk inside first, trying to do the same, and McNamara raised her hand to stop him. He then went to the parking lot to continue his attempt. Near the end of the paragraph 3, Attorney Reed states that Commissioner Hall and Attorney Giangrieco, stated that Ely was transferred because of this issue, that is not true. It was stated by Commissioner Hall and Solicitor Giangrieco that he was transferred from the HR director position because of his performance and character issues.

In Paragraph 4, Attorney Reed uses the phase Write-ups, meaning plural, more than one. There has only been one, which came from Stoud, by the direction of the Commissioners.

In paragraph 5, Attorney Reed offers remarks of Commissioner Warren, that Commissioner Warren had corrected much of McNamara's work, referencing sloppy work since the time she started. Commissioner Warren disagrees with those statements. Commissioner Warren did have issues with the agendas for public meetings, but that was not a representation of all of McNamara's work. In addition, using the word "write-ups" has a meaning of more than one. Not true, McNamara only received one write up from the Commissioner's office during her employment. She received raises and additional responsibilities from her performance.

In paragraph 6 Attorney Reed states that Arnold did not know of the issue between McNamara and Ely until June or July. It was more like February March timeframe.

In paragraph 7, Reed states that Commissioner Arnold had examples of issues between McNamara and other employees with rudeness and condescending behavior and being on a power trip. There are several issues with that statement. First, unless there are written complaints or documents in McNamara's file, the statement is not relevant. Although someone can say anything, we require a complaint to be in writing, as well as any counselling sessions. Second, the HR Director reported that an Attorney, and the previous Treasurer, come into the office in front of several employees yelling and screaming using extremely vulgar language at McNamara, and in return she stayed professional. In addition, as a Deputy Chief Clerk McNamara was responsible for handling discipline in the absence of and in conjunction with the Chief Clerk. Which, one needs to understand that a person in management position requires that person to be stern when dealing with certain personnel matters.

In Paragraph 8 it starts about rumors about Stoud and McNamara. The statement that Stoud excused her "bad behavior" is not true. Just because you don't like the results, or the answers, doesn't mean it wasn't addressed. Any issue that needed to be addressed was addressed. The email goes on to say they were in the courthouse after hours working. It also mentions about her face getting flushed. Well it goes without saying that someone working extra hours and being happy should not be an issue. In addition, just because someone is flush, we shouldn't jump to a conclusion as to why. WHY WOULD YOU EVER CONSIDER USING THAT AS A STATEMENT. It also says that Commissioner Arnold stated, "what is going on between them" and "why do they spend so much time together". Although it states it was in closed meetings, the words were actually quite different. To Commissioner Hall, Commissioner Arnold stated that she felt the need to save Stoud's marriage, that it happened to her and she didn't want to see it happen to him. The HR Director also reported a similar conversation as well as others in the

courthouse. Which leads us to believe that Commissioner Arnold had conversations with other people. Also, it goes without saying that nothing said in the Courthouse is ever confidential. We have a meeting, and the other end of the building knows what was said before we can walk there. The time spent together is a statement of concern, the secession of authority, sharing of information on issues that are sensitive and personnel issues all require close working relationship. In addition, McNamara was Stoud's backup on everything. Yet Commissioner Arnold has no issue with the Director of Veterans Affairs and his female clerk sharing an office together, and yes, behind closed doors. Double Standard? Yes, he is the one mentioned earlier for possible sexual harassment.

In paragraph 10 It also states that Commissioner Arnold and Warren had legitimate cause to write her up. They never wrote anyone up, the only write up on McNamara was done by Stoud.

In paragraph 11, the statement that Commissioner Arnold's complaints of McNamara's attitude is justified, well there is no paper trail of bad attitude, or write-ups for behavior, there is only history of promotions and increases, it's hard to justify that statement. Also, Attorney Reed states "concern for dysfunction and backbiting between the Commissioners" this opinion should have never been in this document. The management of the County is the responsibility of the County and not this Attorney.