**Exhibit F**

# 2

This letter is offered in response to the document dated May 13, 2017 authored by Attorney Reed to the EEOC, in regard to Robert Stoud. Although the intent of the author was to support the position for the County, two of the Commissioners as well as our County Solicitor have concerns over this letter.

In the 1st paragraph it states, "this will serve as Susquehanna County's Position Statement". If this is true, then why did the County or the County solicitor not receive a draft to insure accuracy before it was sent to the EEOC?

6 for the most part is accurate but reference should have been made that only two Commissioners made the decision on Ely in December due to one Commissioner leaving office in December.

Paragraph 5 has no reference to the incident starting in the office when Ely approached McNamara at her desk, and tried to hug and kiss her there. Unfortunately, what everyone missed is that Ely was a Vice-President of HR at a major corporation as well as the previous HR director at the County and should know better than conducting that type of behavior.

Paragraph 7 the statement of Commissioner Hall had reported that Stoud stated he wanted to go back across the street. This statement is not true, the exact statement was "if you don't want me to be the Chief Clerk than send me back across the street to Public Safety". And "if you can't abide by your own policies then send me back across the street" The statement Attorney Reed makes, that Stoud was frustrated with Commissioner Arnold and did not want to work with her is untrue. He as well as the other Commissioners, the County solicitor and our labor Attorney tried on several occasions to educate, inform, and guide Commissioner Arnold. Unfortunately, due to her zero experience in government, and lack of education on County Government, this has become an impossible task. The individual that did not want to work with anyone was Commissioner Arnold. She repeatedly went around Stoud engaged his direct subordinates without his knowledge and creating issues within those departments. She is also the one that during her campaign repeatedly stated that the management was bad and had to go, she also is the one that went into one of Stouds direct reports, and stated she wanted Stoud and McNamara fired. This was the result of her engaging Stoud on an issue that he tried to educate her on the law and county policy and it was reported that she had blown up. As I informed Stoud I cannot control Commissioner's from violating their own policies and acting poorly. As a result, he decided to go back across the street.

Paragraph 8 appears to be an entire synopsis in support of Commissioner Arnold and justification for her actions. Begins stating that the Claimant is a buffer between dept. heads and Commissioners. Chief Clerks are not a buffer they are the operations manager of the County. The Commissioners are responsible for policy and direction, the Chief Clerk carries out the direction and policies set forth by the Commissioners. The statement that the Chief Clerk has a lot of power in the County is true, and that the Commissioners grant this power. Per the County Code, the Chief Clerk does have a lot of power and authority per the code, including being on the Pension Board. The statement "it creates tension at times in the relationship with the Commissioners" is not only a foolish statement but also not true in Susquehanna County. The Chief Clerk knows their role in the management hierarchy and has repeatedly stated in many morning briefings, "what direction would you like me to go with this"? Never has any Chief Clerk defied the majority of the Commissioners. Additionally, Attorney Reed states that the Claimant was given carte blanche by previous Commissioners. NOT TRUE Claimant followed policies and the directives of the Commissioners. He did not act independently. Also states Commissioner Arnold ran on platform to do things differently, and she did not want to follow the chain

of command previously established by claimant. That she spoke directly to employees. Actually, we believe Commissioner Arnold ran because the County would not hire her son, and for just reasons. Her campaign was that the administration was bad and they had to go. The claimant did not create the chain of command, the County Code and Commissioners did. What become obvious in this paragraph was the lack of knowledge by Attorney Reed to understand that there are three Commissioners in the County and when two agree on a process or direction, that is the way it is. Again, the Commissioners created the chain of command and policies and expected everyone to follow, including Commissioners. Claimant tried to point out the policy and how breaking the chain of command undermines authority and the operations. Her response which I heard was "I'm a Commissioner and I can do what I want". The balance of that paragraph again is not true relating to briefings and updates. The County has a briefing every morning at 8:15 to allow the Chief Clerk to update the Commissioners on issues and to receive feedback and direction to move the operations forward. In 17 months Commissioner Arnold has only made about 8 of those meetings. She refuses to come in and engage and has stated that she doesn't like the air in the room with the other female Commissioner being there. We have begged pleaded and tried everything to get her to come to work and engage, she still refuses. The other two Commissioners directed the Chief Clerk not to brief her outside the established time, and to tell her that she should come to the briefing. The purpose of that directive was to get Commissioner Arnold to engage and to stop wasting the chief clerks time by having the same briefing again. He never requested to go across the street because he did not want to work with Commissioner Arnold.

Paragraph 9 talks of demotions which I believe is a poor choice of words. The claimant's titles changed, and responsibilities changed, but the salary never decreased and actually increased. States that claimant was offered the position of chief clerk again by two Commissioners. He stated if the Commissioners agreed not to interfere with him doing the job, he would come back. Not true, actually he stated that he would if, the Commissioners would follow their own policies. Unfortunately, we cannot guarantee that the Commissioners would do so, he did not return.

Paragraph 10 states claimant "inability and refusal to work with Commissioner Arnold". NOT TRUE, Commissioner Arnold is the one that continued to go around Stoud and not communicate with him. When I questioned her on it she said she didn't like him and wasn't going to talk to him.

Paragraph 11 It also says that Commissioner Arnold stated, "what is going on between them" and "why do they spend so much time together". Although it states it was in closed meetings, the words were actually quite different. To Commissioner Hall, Commissioner Arnold stated that she felt the need to save Stoud's marriage, that it happened to her and she didn't want to see it happen to him. The HR Director also reported a similar conversation as well as others in the courthouse. Which leads us to believe that Commissioner Arnold had conversations with other people. Also, it goes without saying that nothing said in the Courthouse is ever confidential. We have a meeting, and the other end of the building knows what was said before we can walk there. The time spent together is a statement of concern, the secession of authority, sharing of information on issues that are sensitive and personnel issues all require close working relationship. In addition, McNamara was Stouds backup on everything. Yet Commissioner Arnold has no issue with the Director of Veterans Affairs and his female clerk sharing an office together, and yes behind closed doors. Double Standard? Yes, he is the one mentioned earlier for possible sexual harassment.