**Exhibit G**

#3

This letter is offered in response to the letter dated May 13, 2017 authored by Attorney Reed to the EEOC in regard to Maggie McNamara. There are many issues with this document from untrue statements to missing statements and twisting of the facts.

In the 1st paragraph it states, "this will serve as Susquehanna County's Position Statement". If this is true, then why did the County or the County solicitor not receive a draft to insure accuracy before it was sent to the EEOC?

Paragraph 2 has no reference to the incident starting in the office when Ely approached McNamara at her desk, and tried to hug and kiss her there. Unfortunately, what everyone missed is that Ely was a Vice-President of HR at a major corporation as well as the previous HR director at the County and should know better than conducting that type of behavior.

Paragraph 3 for the most part is accurate, but reference should have been made that only two Commissioners made the decision on Ely in December due to one Commissioner leaving office in December.

Paragraph 5 again references "write-ups," meaning plural, of course there was only ever one.

Paragraph 6 Attorney Reed offers remarks of Commissioner Warren, that Commissioner Warren had corrected much of McNamara's work, referencing sloppy work since the time she started. Commissioner Warren disagrees with those statements. Commissioner Warren did have issues with the agendas for public meetings, but that was not a representation of all of McNamara's work. In fact McNamara received increases and promotions for her position.

Paragraph 7 Reed states that Commissioner Arnold had examples of issues between McNamara and other employees with rudeness and condescending behavior and being on a power trip. There are several issues with that statement. First, unless there are written complaints or documents in McNamara's file, the statement is not relevant. Although someone can say anything, we require a complaint to be in writing, as well as any counselling sessions. Second, the HR Director reported that an Attorney, and the previous Treasurer, come into the office in front of several employees yelling and screaming using extremely vulgar language at McNamara, and in return she stayed professional. In addition, as a Deputy Chief Clerk McNamara was responsible for handling discipline in the absence of and in conjunction with the Chief Clerk. Which, one needs to understand that a person in management position requires that person to be stern when dealing with certain personnel matters.

Paragraph 8 again attacks the chain of command. Attorney Reed should know that no entity functions without a chain of command. I'm sure in her firm there is a chain of command to follow, just as CCAP has one.

Paragraph 9 of false rumors, not true Commissioner Arnold said it to the Commissioner's, solicitor and others. Commissioner Arnold stated that she felt the need to save his marriage, that it happened to her and she didn't want to see it happen to him. The HR Director also reported a similar conversation as well as others in the courthouse. Which leads us to believe that Commissioner Arnold had conversations with other people. Also, it goes without saying that nothing said in the Courthouse is ever confidential. We have a meeting, and the other end of the building knows what was said before we can walk there. The time spent together is a statement of concern, the secession of authority, sharing of information on issues that are sensitive and personnel issues all require close working relationship. In

addition, McNamara was Stoud's backup on everything. Yet Commissioner Arnold has no issue with the Director of Veterans Affairs and his female clerk sharing an office together, and yes behind closed doors. Double Standard? Yes, he is the one mentioned earlier for possible sexual harassment.