# Exhibit K

 

*Commitment to Client and Community*
**MCNERNEY, PAGE, VANDERLIN & HALL**
*Attorneys and Counsellors at Law*

SINCE 1939

May 13, 2017

VIA EMAIL: Elizabeth.wjasow@eeoc.gov

Re:  Robert Stoud
     Respondent:   Susquehanna County
     Charge No.:   530-2016-03963

Dear Ms. Wjasow:

This will serve as Susquehanna County's Position Statement relative to the above-referenced Charge. Claimant has alleged a violation of the Anti-Retaliation Provision of Title VII. Susquehanna County denies Claimant's allegation of retaliation. Further it is the County's position that Claimant cannot establish the two of the three requisite factors of a retaliation claim. To establish such a claim, Claimant must establish (i) a protected employee activity; (ii) adverse action by the employer, either after or contemporaneous with the protected activity; and (iii) a causal connection between the protected activity and the employer's action.

Initially, Claimant's Charge of Discrimination is defective as it lacks specificity, and, instead, it contains conclusory statements. He complains "ever since the complaint was filed, I have been retaliated against by being subjected to a hostile work environment including false rumors being spread that McNamara and I are having an affair." The complaint referenced therein was a claim of sexual harassment made by Deputy Chief Clerk Maggie McNamara on December 23, 2015. A hostile work environment is not a description of working conditions, but a legal conclusion rooted in discrimination. To prove a hostile work environment, a Claimant would have to allege facts to prove he suffered intentional harassment because of a protected action; the harassment was pervasive and regular; the harassment detrimentally affected him; and the harassment would have detrimentally affected a reasonable person of the same position. Claimant has alleged no facts in support of his conclusory statements.

Some background is in order here. Susquehanna County hired Claimant as the fulltime Emergency Management Coordinator in 2012. Prior thereto, Claimant had retired from the Pennsylvania State Police where he worked as a Detective/Investigator including profiling criminal suspects. In 2013, Claimant was promoted to the Director of Public Safety. In 2014, Claimant was promoted to Acting Chief Clerk and Director of Public Safety. On January 4, 2016, Claimant was promoted as the Chief Clerk and Director of Public Safety.

Immediately prior to him being promoted as the Chief Clerk/Director of Public Safety, the Commissioners charged Claimant with the duty to investigate McNamara's claim of sexual harassment. McNamara filed her own Charge of Discrimination on December 21, 2016 to EEOC No. 53-2016-03380, a day after Claimant filed his Charge of Discrimination.

433 MARKET STREET, WILLIAMSPORT, PA 17701 • 570-326-6555 • MPVHLAW.COM

GEORGE V. COHEN • MICHAEL H. COLLINS • JONATHAN L. DEWALD • PETER G. FACEY • BENJAMIN E. LANDON
THOMAS C. MARSHALL • ROBIN A. READ • THOMAS E. ROBINS • RYAN M. TIRA • ROBERT B. WAYNE • LEVI J. WOODWARD

The incident of sexual harassment reported by McNamara occurred on December 23, 2015 after an office Christmas party at the Susquehanna County Courthouse. Richard Ely, the Veterans' Affairs Officer for Susquehanna County, had tapped on McNamara's car window and, after she opened the car window, he leaned into the window with the intent to kiss her on the cheek to wish her a Merry Christmas. McNamara recoiled and Ely stopped immediately and apologized.

Claimant did not witness the sexual harassment, however, McNamara verbally reported it to him. Claimant did not require McNamara to submit a written report of the incident, but he did investigate McNamara's allegation and determined it was founded. Attached you will find Ely's two-page report provided to Claimant as part of the investigation. After the investigation, Claimant discussed the matter with the Board of Commissioners in place in December, 2015. There was some discussion of terminating Ely, but the Board finally decided to provide him with a warning that any future harassing behavior would result in his termination. Attached you will find the Final Written Warning dated December 30, 2015 from Claimant to Ely which determined that the allegation of sexual harassment was founded; that said behavior was unprofessional and unacceptable; and that said behavior would not be tolerated at any level in the future. McNamara had not made any additional claims of sexual harassment by Ely or anyone else subsequent thereto. Thus, Claimant was arguably involved in a protected employee activity, i.e. the investigation of McNamara's claim of sexual harassment against Ely and the discipline of the sexual harasser.

However, Claimant cannot establish the last two elements of a violation of the Anti-Retaliation provision. First and foremost, he must prove he suffered an adverse employment action. Initially, he was promoted on January 4, 2016 to Chief Clerk and Director of Public Safety which was within two weeks after his investigation and resolution of McNamara's claim of sexual harassment. Title VII prohibits discrimination in hiring, firing and compensation, terms, conditions, or privileges of employees. Claimant was not fired, and there were no changes in his compensation, terms, conditions, or privileges. On June 22, 2016, Claimant was transferred from the Chief Clerk/Director of Public Safety to the Deputy Chief Clerk/Director of Public Safety. Although he characterized it as demotion in his Charge of Discrimination, the change was made at his request and without any reduction in salary or benefits. He had told Commissioner Alan Hall that he wanted to go "back across the street" meaning he wanted to just be the Director of Public Safety, whose office was across the street from the Courthouse. After being promoted to the Chief Clerk position, Claimant had often threatened that he was going to go "back across the street" when he was frustrated because a Commissioner would not do what he wanted her to do. The reality is he requested the change as he did not want to work with Commissioner Elizabeth (Betsy) Arnold.

Elizabeth Wjasuw
May 13, 2017
Page 3 of 5

Commissioner Arnold had been sworn in as a commissioner on January 4, 2016, the same day Claimant was promoted to Chief Clerk. Prior to Commissioner Arnold becoming a commissioner, Claimant had a system and team in place that worked well for him and for the previous Board of Commissioners. The team included McNamara as his Deputy Chief Clerk. As the Chief Clerk of the County, Claimant reported directly to the Commissioners and he was the buffer between the Commissioners and the Department Heads and Employees. The Chief Clerk normally has a lot of power within the County System. Although the Commissioners grant the Chief Clerk the power, it creates tension at times in the relationship with the Commissioners. As of January 4, 2016, the Board of Commissioners Claimant reported to included Commissioners MaryAnn Warren and Alan Hall, both of whom served on at least two of the previous Board of Commissioners, and newly elected and sworn in Commissioner Arnold. Attorney Michael Giangrieco had previously served two terms as a Commissioner ending in December, 2015. Attorney Giangrieco is now the solicitor of Susquehanna County. Claimant had worked well with the previous Board of Commissioners and was given almost carte blanche by the previous Board to supervise the County Department Heads and employees. He had a chain of command in place which worked well for Claimant. However, Commissioner Arnold, being the new commissioner, wanted to do things differently. She ran her election campaign for commissioner on a platform to do things differently at the Courthouse. Commissioner Arnold did not want to follow the chain of command previously established by Claimant. Instead of dealing with employee concerns through Claimant, Commissioner Arnold spoke directly with the employees. Claimant was challenged by Commissioner Arnold and he felt as if she was interfering with his established practices and the way the County had operated with the former administration. Claimant did not embrace Commissioner's desire to do things differently and, instead, became dismissive and defiant towards her. For instance, on more than one occasion, Claimant refused to brief Commissioner Arnold on County business because he had already briefed the other two Commissioners. Additionally, on another occasion, Claimant simply refused to answer a direct question asked by Commissioner Arnold. Because he did not want to work with Commissioner Arnold any longer, he requested to be "sent back across the street" to do just the job of Director of Public Safety.

In response to his request, Claimant was demoted to Deputy Chief Clerk/Director of Public Safety on June 23, 2016 without any reduction in salary, benefits or privileges. The intent was that Claimant would work as the Deputy Chief Clerk temporarily until the County could hire a new Chief Clerk, at which time the intent was to honor Claimant's request and demote him to just be the Director Public Safety with a corresponding reduction in salary. However, Claimant remained the Deputy Chief Clerk and Director of Public Safety until recently when he transferred into the District Attorney's Office as a Detective for the Drug Enforcement Task Force. He still serves in the dual role of the Director of Public Safety. While he was the Deputy Chief Clerk, his wages were not reduced, nor did he lose any benefits or privileges. Further, after he was demoted to Deputy Chief Clerk, two of the three Commissioners asked him several times to resume his position as the Chief Clerk. However, Claimant has repeatedly said he would only do so if the Commissioners agreed not to interfere with him doing his job. Thus, it

Elizabeth Winsow
May 13, 2017
Page 4 of 5

appears Claimant is only willing to be the Chief Clerk if he can do so under the terms set forth by the previous Board of Commissioners and is not willing to work with the current Board of Commissioners as it currently functions. This is a very naive position as the Commissioners are his bosses who can set the priorities and agenda and change them at will. Because he did not lose any wages, benefits or privileges as a result of being demoted to the Deputy Chief Clerk and because his job a Chief Clerk was always available to him if he was willing to work with all of the Commissioners on the current Board, Claimant has no evidence to support his claim that he suffered an adverse employment action.

Further, there is no causal connection between the McNamara sexual harassment incident and any action taken by the Commissioners. As previously stated, Claimant was actually promoted from Deputy Clerk to Chief Clerk of the County immediately after the incident and his handling thereof. Claimant's interpretation of a hostile work environment was actually his inability and refusal to work with Commissioner Arnold. Commissioner Arnold was not yet sworn in as a Commissioner when the McNamara sexual harassment incident occurred. In fact, Commissioner Arnold did not know anything about the incident for several months after she was sworn in on January 4, 2016. Without knowledge of the McNamara sexual harassment incident, Commissioner Arnold could not have taken any action against Claimant in retaliation therefore.

The only specific incident of a hostile work environment included in his Charge of Discrimination is "false rumors being spread that McNamara and I are having an affair." In a private meeting between the three Commissioners and the Solicitor, Commissioner Arnold asked "what is going on between them?" meaning Stoud and McNamara. She said so in frustration as Claimant had always defended McNamara's sloppy work and rude and disrespectful behavior to other employees. On more than one occasion, employees had complained to Commissioner Arnold that McNamara had been rude and yelled at other County employees including the Treasurer and Department Heads. Instead of disciplining McNamara for such behavior, Claimant always defended her actions to the Commissioners. Further, Commissioner Arnold had seen Claimant and McNamara in the Courthouse after hours putting up posters laughing and giggling and she questioned why they were doing so. Additionally, in response to the incident where Claimant would not answer a question for Commissioner Arnold, she went into Jeanne Conklin's office (the current Human Resource Director) and said she wanted Claimant and McNamara fired. She told Conklin that she found Claimant rude and wanted to write him up for refusing to answer her. Commissioner Arnold also said "and why do they have to spend so much time together" in talking about Stoud and McNamara. Although Commissioner Arnold may have been a little loose in her language and potential implications, she did not allege Claimant and McNamara were having an affair. However, Claimant threatened the County with a slander action in state court and tried to extract $75,000.00 from the County for Commissioner Arnold's alleged slanderous comments. When the County would not pay, he resorted to a discrimination claim against the County. Although he did not like or want to work with Commissioner Arnold, she is an elected official and part of the current Board of Commissioners and was one of his bosses. Perceived bad behavior by a Commissioner cannot establish a claim for retaliation or

Elizabeth Wjosow
May 13, 2017
Page 5 of 5

hostile work environment without a causal connection with protected activity. Claimant lacks any evidence to prove Commissioner Arnold's behavior which Claimant opposed was related in any manner to his investigation or involvement in the McNamara Sexual Harassment Claim.

In sum, any action by the Susquehanna County Commissioners against Claimant had nothing to do with the McNamara sexual harassment. Although he can arguably prove the first factor of a retaliation claim—that he was involved in protected employee activity—he cannot prove the last two factors. Claimant was the one who chose not to continue as the Chief Clerk of the County. He was demoted to the Deputy Chief Clerk at his request, but without any reduction in wages, benefits or privileges. Two of the three Commissioners have repeatedly asked him to resume the Chief Clerk position, but he has refused as he cannot do the job on his own terms. For reason stated above, Susquehanna County requests Claimant's claim of Retaliation be denied.

Very truly yours,

McNERNEY, PAGE, VANDERLIN & HALL

Robin A. Read, Esquire
rread@mpvhlaw.com

RAR/slm