UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT STOUD, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION - LAW |
| | : | |
| v. | : | |
| | : | |
| SUSQUEHANNA COUNTY, | : | NO. 3:17-CV-2183-MEM |
| | : | |
| Defendant | : | |

BRIEF IN OPPOSITION PLAINTIFF'S MOTION FOR SANCTIONS and MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants, Susquehanna County, through its Attorneys, Kreder Brooks Hailstone LLP, hereby file the following Brief in Opposition to Plaintiff's Motion for Sanctions and Motion for Judgment on the Pleadings.

**1. Motion for Sanctions**

Plaintiff has provided the court with a false narrative regarding the disclosure of the documents regarding the filings before the EEOC. First, the documents Plaintiff has obtained were and are protected by attorney-client privilege as they were prepared at the direction of and upon the advice of the County Solicitor, Michael Giangrieco. I note that Attorney Giangrieco has

1

subsequently sued Susquehanna County, however, that action has been dismissed. Additionally, the documents were provided to Attorney Karam by Defense Counsel under objection as Attorney Work Product. Second, the Plaintiff's allegations that the EEOC filings were prepared in such a way to conceal evidence is not born out in the documents before the court. Plaintiff had every right at the time of the filing of the EEOC answers to respond. Additionally, the alleged concealments are facts which could have been challenged by Plaintiff as he was in the best position to know about their falsehoods. Finally, the grievances submitted to CCAP at the direction of the County Solicitor were focused almost exclusively on the Commissioners displeasure with their former Attorney.

Attorney Mike Giangrieco, acting as the County's Solicitor, directed Commissioners Hall and Warren and HR Director Jeanne Conklin to provide CCAP with information which in their opinion was either not included or in contradiction to the Position Paper filed by the County's Defense Attorney. During his most recent deposition, Commissioner Hall stated that the letters sent to CCAP were sent only after seeking the advice of the County Solicitor and at his direction. Commissioner Hall in response to a question regarding whether he obtained any advice from the County Solicitor stated:

"So in that conversation I said, you know, I think I need to write a

2

letter; and Giangrieco, our solicitor at the time, said, well, you guys should all write letters if you disagree. He said -- I can't remember at that point whether he said he was going to or he wasn't going to -- I'm trying to think that he said he wasn't going to because he was a solicitor, but he may have. I don't have any knowledge of it." (Depo Allan Hall, pp. 26 (lns 22-25) and 27 (lns 1-5).

Clearly the letters were sent at the direction and on the advice of the County Solicitor.

Those letters were then shared with the County's Insurance adjusters and discussed at length. The County then made the decision to request new counsel. The undersigned counsel was thereafter engaged. The EEOC filings were complete by the time the current counsel was engaged and the EEOC made a determination that, based on its investigation, that discrimination did not occur. Afterwards, current counsel performed his own investigation and obtained all materials which the which were relevant to the action. Those documents were provided to counsel for Plaintiff. Although counsel was made aware that the Commissioners were unhappy with the representation provided prior to his involvement, the EEOC phase of the case ended with the determination and a Complaint was filed. At no time until recently did counsel become aware of the

statements prepared by Commissioner Hall, former Commissioner Warren and HR Director Jeanne Conklin. Upon receiving the documents, they were provided to Plaintiff's counsel and identified as privileged. Plaintiff's counsel was already in possession of a letter from Attorney Giangrieco to Commissioner Arnold.

The statements prepared at the direction of the County Solicitor were not provided to the undersigned Counsel, however, even if provided, they are protected under attorney client privilege. When counsel became aware of the documents, through testimony of his own witnesses, the documents were provided and privilege was invoked.

The attorney-client privilege bars from disclosure confidential communications made by a client to an attorney for the purpose of obtaining legal advice. Fisher v. United States, 425 U.S. 391, 403 (1976). As the Supreme Court has noted, "The attorney client privilege is one of the oldest recognized privileges for confidential communications. The privilege is intended to encourage 'full and frank communication between attorneys and their clients and therefore promote a broader interest in the observance of the law and the administration of justice.' " Swidler & Berlin v. United States, 524 U.S. 399 (1998) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The United States Court of Appeals for the Third Circuit has set forth the traditional elements of the attorney-client

privilege. The communications that may be protected from disclosure in discovery are: 1) the asserted holder of the privilege is or sought to become a client; 2) the person to whom the communication was made a) is a member of the bar of a court, or is his or her subordinate, and b) in connection with this communication is acting as a lawyer; 3) the communication relates to a fact of which the attorney was informed a) by his client b) without the presence of strangers c) for the purpose of securing primarily either i) an opinion of law or ii) legal services or iii) assistance in some legal proceeding, and d) not for the purpose of committing a crime or tort; and 4) the privilege has been a) claimed and b) not waived by the client. Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co., 32 F.3d at 862.

Here, the privilege was asserted, both during depositions and when the documents were provided. There was no waiver of the privilege, even though Attorney Giangrieco, through his Complaint, attempted to revoke the privilege himself, this court has already ruled that Giangrieco's advice to the Commissioners regarding the Stoud Complaint is privileged. Commissioner Hall sought out Attorney Giangrieco's advice before contacting his insurance carrier. Clearly, the documents produced are protected.

The statements provided by Commissioner Hall, former Commissioner Warren and HR Director Jeanne Conklin do not point to any specific factual information which would make it necessary to file an amended Position Paper.

Commissioner Hall testified that his understanding of the phone conversations with CCAP was that they had a difference of opinion regarding the contents of the Position Paper (Hall Depo., p. 12, lns. 14-20). Commissioner Hall also indicated that he never spoke to Attorney Reed about the county's concerns (Hall Depo., p. 16, lns 20-23). After Attorney Reed was replaced, current counsel was informed that the Commissioners, including Commissioner Arnold, were not satisfied with the Position Paper. After current counsel reviewed the Position Paper, and after his own investigation, he determined that there were no issues with the Position Paper and Attorney Reed was fulfilling her duty as a zealous advocate for her clients.

  The statements provided by Hall, Warren and Conklin are written as the opinion of the writers regarding their concerns about the way in which the case was being defended. Included in their statements is the complaint that the Commissioners were not given a chance to review the EEOC Position Paper prior to it being filed. Also, there are concerns that Attorney Reed focused more on Commissioner Arnold at the expense of the other Commissioners. The statements are not the list of factual inaccuracies which Plaintiff would have the Court believe. In fact, Plaintiff's Brief bears this out. When providing evidence that the Position Paper was inaccurate, Plaintiff states that the position paper accuses Plaintiff of not communicating with Commissioner Arnold. In fact, Plaintiff's own

brief contradicts this statement because Plaintiff was directed by Commissioner Hall to not communicate with Commissioner Arnold. The Plaintiff goes on to support his claims by indicating that the chain of command was not set by him and questions the number of times Mr. Ely attempted to kiss Maggie McNamara. Clearly these are factual allegations Plaintiff had every right to challenge and the first-hand knowledge to challenge them, either before the EEOC or during this litigation.

In Commissioner Hall's unsigned and undated statement (Plaintiff's Exs. B and H as they are duplicates ), he indicates that he believes Attorney Reed spent too much time with Commissioner Arnold. He also spends most of his missive complaining about Commissioner Arnold including his assumptions about why she ran for office. When he does turn to the issues specific to the EEOC Position Paper he alleges that Attorney Reed was using the document as a money making machine.

Former Commissioner Mary Ann Warren likewise doesn't reference any specific facts that were misrepresented in the Position Paper in her statement (Plaintiff's Ex. C). Instead, Warren focuses on Plaintiff being directed, by Commissioner Hall, to not provide Commissioner Arnold with information from the 8:15 a.m. daily briefings if she was not present. Clearly, Commissioner Arnold

complaint against Plaintiff that he would not communicate with her is supported by Warren's statement. Warren also spends much of her statement defending her interactions with the former Deputy Chief Clerk, Maggie McNamara.

The statement by Jeanne Conklin, Susquehanna County's HR Director, doesn't point to anything specific. However, she felt, it made Mr. Stoud seem like a spoiled child (Planitiff's Ex. D). She describes herself as a part of Stoud's "well oiled machine". These are clearly differences of opinion.

Attorney Reed prepared a Position Paper in response to allegations raised by Robert Stoud about his treatment as Chief Clerk. The Plaintiff had the opportunity to answer the claims in the Position Paper. The EEOC, after its investigation, determined that no discrimination had taken place, but Mr. Stoud had the right to file a private complaint. Plaintiff now attempts now to rewrite the history of this action.

**2.    Motion for Judgment on the Pleadings**

Defense counsel admits that an Answer has not been filed. This was an oversight on the part of Defense counsel. Counsel's client should not be punished for counsel's mistake.

A motion for judgment on the pleadings should only be granted if the

movant establishes that "there are no material issues of fact, and he is entitled to judgment as a matter of law."Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005) In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party. Allah v. Al–Hafeez, 226 F.3d 247, 249 (3d Cir. 2000).

Here, there are clearly material issues of fact. Plaintiff, in his Motion and Brief, has raised questions bout the material facts and seeks to challenge facts provided in the response to the EEOC Complaint.

Finally, Plaintiff's motion is not ripe. Plaintiff correctly points out that a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed.R.Civ.P. 12(c). However, the pleadings are only closed after an answer is filed, along with a reply to any additional claims asserted in the answer. Austin Powder Company v. Knorr Contracting, Inc., 2009 WL 773695, at *1 (M.D.Pa. Mar. 20, 2009). Here, as Plaintiff correctly pointed out, no Answer has been filed. Therefore, the Motion for Judgment on the Pleadings is not ripe.

WHEREFORE, the Defendant, Susquehanna County, respectfully request the Court to issue an Order denying Plaintiff's Motion for Sanctions and Motion for Judgment on the Pleadings.

Respectfully submitted,

KREDER BROOKS HAILSTONE LLP

220 Penn Avenue, Suite 200
Scranton, PA 18503      By  /s/ A. James Hailstone
(570) 346-7922                A. James Hailstone
                              Attorney I.D. #80055
                              Attorneys for Susquehanna County

CERTIFICATE OF SERVICE

AND NOW, this 19th day of January, 2021, A. James Hailstone, a member of the firm of Kreder Brooks Hailstone LLP, electronically filed the foregoing Brief in Opposition with the Clerk of the United States District Court for the Middle District of Pennsylvania using the CM/ECF system which sent notification of such filing to the following Filing Users at the following e-mail address(es):

Gerard M. Karam, Esquire
Mazzoni, Karam, Petorak & Valvano
321 Spruce Street, Suite 201
Scranton, PA 18503
570-348-0776
gkaram18@msn.com
*ATTORNEYS FOR PLAINTIFF*

                                     /s/ A. James Hailstone
                                     A. James Hailstone
                                     Attorney I.D. #80055
                                     Attorneys for Defendant